Filed 6/5/13  Guess v. Significance Foundation CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| L. DONALD GUESS, | D060100 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2009-00095286-CU-CO-CTL) |
| THE SIGNIFICANCE FOUNDATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

Gilbert Kelly Crowley & Jennett, David G. Molinari and Joy L. Shedlosky for Defendant and Appellant.

Keith H. Rutman for Plaintiff and Respondent.


Plaintiff L. Donald Guess (Guess) incurred substantial attorney fees to two law firms defending him in a federal court action (the federal civil action).  In the federal civil action, the government sought injunctive relief against Guess and against a family of

entities, including defendant The Significance Foundation (Foundation), in which Guess had served in numerous capacities, including an as officer and director of Foundation. After the federal civil action was resolved in favor of the defendants, Guess sought indemnification from Foundation for the attorney fees he incurred in defending the federal civil action. When Foundation declined to indemnify Guess, he filed the present action against Foundation. The dispute was tried to the court, which ruled in favor of Guess's claims for indemnity.

On appeal, Foundation asserts the trial court's judgment must be reversed for three reasons. First, Foundation contends that as a matter of law the legal expenses incurred by Guess in defending the federal civil action were not incurred "by reason of [Guess] being or having been a Director [or] officer" of Foundation, and therefore his legal expenses fall outside the scope of the indemnity provisions of Foundation's bylaws. Second, Foundation contends that because Guess paid a substantial portion of the legal fees by obtaining loans from third parties, and there was no evidence at trial that Guess remained liable to repay those loans, he did not suffer any "expenses or liabilities" for which Foundation owed indemnification. Finally, Foundation argues the trial court improperly admitted into evidence the legal billings of Guess's attorneys.

# I

## FACTUAL AND PROCEDURAL BACKGROUND[1]

A. <u>The Underlying Context</u>

Guess, who began his career as a dentist, developed a program for fellow medical professionals that came to be known as "xélan." The xélan program was part financial management and planning, part tax planning, and part life philosophy. Over time, Guess set up various entities as part of the xélan family of companies, nearly all of which were for-profit companies handling insurance, pension and investment matters, and Guess was typically an officer and/or director of these entities and generally retained an ownership interest in these entities.

Foundation was the one nonprofit exception that played a role in some of the tax planning aspects of the overall xélan program. Foundation was formed in the late 1990's as an Oklahoma nonprofit corporation and, until late 2004, Guess served both as its president and as a member of its board of directors. Foundation's bylaws included a provision under which Foundation, to the extent permitted by the laws of the State of Oklahoma, was to provide indemnification:

> " 'against all reasonable expenses and liabilities, including counsel
> fees, necessarily incurred by or imposed upon [them] in connection
> with any threatened, pending, or completed action, suit or
> proceeding, whether civil, criminal, administrative or investigative
> . . . , to which [they] may be made a party or in which such person
> may become involved by reason of being or having been a Director,

---

[1]    Our factual background is derived largely from the trial court's statement of decision because neither party contests the sufficiency of the evidence supporting the trial court's factual determinations.

3

officer, [or] employee [of Foundation] if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of [Foundation].' "

Shortly after Foundation's formation, the Internal Revenue Service (IRS) approved Foundation as a tax-exempt, publically supported charity. However, years of entanglements with the IRS followed.

B. The Federal Civil Suit

In the early 2000's, Foundation became aware that it was being audited by the IRS in connection with its application for permanent tax-exempt status. Sometime after the audit/examination, over one hundred donors to Foundation received notices their tax returns were under examination; Foundation believed there had been improper theft of confidential donor information by the IRS.

In early November 2004 the federal government executed a search warrant on the San Diego, California, headquarters for the various xélan entities and, at the same time, filed the federal civil suit. That suit named numerous defendants, including Guess (along with several other individuals involved in the xélan family of companies), Foundation and numerous other xélan entities, and asserted claims sounding in fraud. In conjunction with the federal civil suit, the government sought and obtained an ex parte restraining order freezing the assets of the xélan entities and appointing a receiver, and setting a hearing on a preliminary injunction for early December 2004.

The month between execution of the search warrant and the hearing on the preliminary injunction was described by the trial court as a "frenetic" period for the attorneys representing Foundation, Guess and the other involved defendants. Legal

4

representation was provided by Chicoine & Hallett (which assumed the supervisory role for the legal team representing the named defendants, including Foundation) and Mr. Lipman (who was primarily responsible for overseeing potential criminal issues of the involved defendants). These sets of attorneys billed Guess for their services, and it was the fees billed by these attorneys over the period from November 4 through December 15, 2004 (the date of the federal court's ruling on the government's request for a preliminary injunction) that formed the bulk of the fees for which the trial court in the present case awarded indemnity to Guess.

Guess sought over $230,000 from Foundation, which apparently represented fees billed to Guess for the period from November 4, 2004, through October 3, 2006. The trial court separated the fees into three time frames. In the first time frame (from November 4 through November 9, 2004), the trial court found that because the attorneys were the only attorneys effectively representing Foundation and the other entities during this period, and the attorneys were engaged in "triage/damage-control," attempting to determine the nature of the government's case, the services helped all of the entities (including Foundation) to shape their litigation strategy, and therefore the billings for all services performed during the first week (November 4 through November 9, 2004) should be included as fees incurred by Guess by reason of his being an officer or director of Foundation. The trial court concluded, as to the second period (November 10 through December 15, 2004), that because the Chicoine & Hallett and Lipman bills involved services performed in the context of a cooperative and unified defense strategy, most of the work inured to the benefit of all of the entities, including Foundation. However, the

5

court also noted that some of the work involved issues peculiarly applicable to entities other than Foundation, and therefore reduced by 35 percent the fees requested for this period. Finally, for the period after January 2005, the court awarded only those fees as to which the billing entries for the rendered services referred to Foundation or persons associated with Foundation, and rejected Guess's argument that the remaining services performed after January 2005 were fees incurred "by reason of" Guess having been an officer or director of Foundation.

In response to the federal civil action, Foundation's board (along with its attorney, Mr. Will) convened an emergency meeting on November 9, 2004. Prior to this meeting, Guess and Will discussed the government's case and Guess's proposal that Guess should resign to prevent the government from contending that his continued involvement in Foundation was a reason for closing Foundation. They also discussed that Guess should be indemnified for fees incurred to defend actions he took as an officer or director of Foundation, and Will agreed to place these issues before the Foundation's board. The minutes of the meeting reflected Foundation's board (1) agreed it was in Foundation's best interests for Guess to resign, (2) was informed that Foundation's bylaws and applicable law required Foundation to indemnify its officers and directors, and (3) agreed Foundation should advance legal expenses to Guess for defense of his actions taken by him of behalf of Foundation. No funds were ever advanced so Guess borrowed to pay the bills from Chicoine & Hallett and from Mr. Lipman, and agreed to repay these loans when he was able to do so.

6

Chicoine & Hallett and Mr. Lipman, supervising a team of separate attorneys retained by Foundation and other entities in a coordinated effort under a joint defense agreement, opposed the government's motion and lawsuit. This coordinated effort was successful: the federal court denied the government's request for a preliminary injunction, in part because the government had not shown likely success on the merits of the government's claims. The government then dismissed the case as to all defendants, including Foundation and Guess, and Foundation obtained an award of its separate attorney fees from the government but, based on a strategic decision by the defense team, Guess did not separately seek any attorney fees award.[2]

C. <u>The Present Lawsuit and Judgment</u>

In the fall of 2008 Guess demanded Foundation indemnify him for the attorney fees, but Foundation refused. Guess subsequently filed the present action and, at trial, sought approximately $85,000 as fees paid to Chicoine & Hallett and approximately $46,000 as fees paid to Mr. Lipman's firm.

At trial, Foundation contended Guess had no right to indemnity for the requested fees because he could not establish a necessary predicate that he incurred the fees "by reason of being or having been" an officer or director of Foundation rather than in relation to other entities in the xélan family of companies. Foundation also asserted

---

[2] Although the government continued looking into matters surrounding the xélan family of companies and program, as of mid-2007 attorneys assured Foundation there was no information suggesting Foundation was subject to an ongoing criminal investigation. Although Guess was indicted in late 2008 on charges of filing a false personal income tax return, and was later convicted on that charge, his personal tax returns were not in issue during the period that the federal civil suit was pending.

Guess could not show another necessary predicate, i.e. that he had acted "in good faith and in a manner [he] reasonably believed to be in or not opposed to the best interests of [Foundation]." Foundation also claimed Guess could not establish a right to indemnity because he could not demonstrate he was legally obligated to repay the loans he incurred to satisfy the attorney fees. Foundation also asserted at trial that the evidence would show Guess waived his right to indemnity, and did not mitigate his damages. The trial court rejected these defenses, and on appeal Foundation does not challenge these aspects of the judgment.

The trial court's proposed statement of decision found Guess had acted in good faith and in a manner he reasonably believed to be in the best interests of Foundation. The court also concluded that, under the parties' practical construction of the indemnity clause, whether Guess had incurred the fees "by reason of" having been an officer or director of Foundation was essentially a question of allocation: to what extent were the fees attributable to defending Foundation's interests in the federal civil suit rather than to defending the interests of other xélan entities entangled in the federal civil suit. The court then closely examined the billings and apportioned the fees between those attributable to defending Foundation's interests in the federal civil suit and those attributable to defending other xélan entities (or Guess personally) in the federal civil suit, and awarded Guess indemnity in the amount of approximately $95,000. After making additional findings and conclusions in response to Foundation's objections to the proposed statement

8

of decision,[3] the court affirmed its statement of decision and entered judgment in favor of Guess.

II

ANALYSIS

A. The Interpretation Claim

Foundation argues the court erred when it interpreted the indemnity provision in Foundation's bylaws as covering the attorney fees sought by Guess.

*Legal Standards*

The rules governing the role of the court in interpreting a written instrument are well established.  The interpretation of a contract is a judicial function.  (*Pacific Gas & Electric Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-40 (*Pacific Gas & Electric*).)  In engaging in this function, the trial court seeks to "give effect to the mutual intention of the parties as it existed" at the time the contract was executed.  (Civ. Code, § 1636.)  Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.  (Civ. Code, § 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained

---

3    For example, Foundation objected that the court (1) had not responded to the statute of limitations defense interposed by Foundation to Guess's claim for indemnity, (2) had not explained why Guess could assert an indemnity claim when there was no evidence he was liable to repay the loans he took out to pay the attorney fees bill, and (3) had not included an explanation of the court's evidentiary rulings on Foundation's hearsay and lack of foundation objections to the attorney fees bills.  The court rejected the first two claims, and admitted the documents over Foundation's evidentiary objections.

9

from the writing alone, if possible"]; Civ. Code, § 1638 [the "language of a contract is to govern its interpretation"].)

Although a court generally may not consider extrinsic evidence varying or contradicting the clear and unambiguous terms of a written, integrated contract (cf. *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1478), extrinsic evidence is admissible to interpret an agreement when a material term is ambiguous. (*Pacific Gas & Electric, supra,* 69 Cal.2d at p. 37 [if extrinsic evidence reveals that apparently clear language in the contract is in fact susceptible to more than one reasonable interpretation, then extrinsic evidence may be used to determine the contracting parties' objective intent].) Thus, when the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Ibid*.) If, considering the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. (*Id*. at pp. 39-40.) One type of extrinsic evidence that carries particular weight is how the parties construed the contract before the dispute arose. (*Universal Sales Corp. v. Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 761 ["when a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court"].)

On appeal, "[o]ur review of the trial court's interpretation of the agreement is governed by the settled rule that where extrinsic evidence has been properly admitted as an aid to the interpretation of a contract and the evidence conflicts, a reasonable construction of the agreement by the trial court which is supported by substantial evidence will be upheld." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) We defer to the trial court's construction if it was a reasonable construction of an ambiguous clause, and is supported by substantial evidence, when the trial court's ruling was based on conflicting evidence as to the intention of the contracting parties.

*Analysis*

We conclude substantial evidence supports the trial court's interpretation that the intent of the indemnity provision in Foundation's bylaws was that, when an officer or director is required to expend legal fees to defend actions he or she undertook in his or her capacity as an officer or director of Foundation, the indemnity clause was triggered as long as the actions taken by the officer or director were undertaken in good faith. Certainly, the language of the bylaws is reasonably susceptible to that interpretation, because the indemnity provision is triggered when an officer or director is required to defend him- or herself because ("by reason of") of his or her involvement with Foundation ("being or having been a Director [or] officer [of Foundation]") and good faith actions in that capacity ("if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of [the Foundation]"). Moreover, before the dispute arose, Foundation's Board placed the same

11

gloss on the language of the indemnity clause, because the Board agreed (shortly after the federal civil suit naming both Foundation and Guess commenced) Foundation should provide Guess with advances to cover his legal expenses to defend the actions he took on behalf of Foundation, subject to the condition that he provide assurances such advances were expended only on Foundation-related issues.

Foundation's argument on appeal appears to be that, as a matter of law, the only interpretation to which the indemnity language is reasonably susceptible is that a director or officer is entitled to indemnification only where his or her liability is "derivative and secondary to [Foundation's] liability" and he or she was named as a defendant in the litigation "solely because he [or she] held a position as an officer or director," and does not apply if the litigation pleaded that the officer or director engaged in some affirmative conduct alleged to be wrongful. We are not persuaded by this construction. First, Foundation cites no authority for this stilted construction of the indemnity language. Second, this construction ignores that the language contemplates indemnity for legal costs will apply even to litigation pleading that the officer or director *had* engaged in some affirmative conduct in his or her capacity as an officer or director, because the language specifies the officer or director may obtain indemnity for defense costs as long as his or her affirmative conduct was "in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of [the Foundation.]" Such a "good faith" condition would be surplusage under Foundation's construction of the language because, under Foundation's construction, indemnity would be unavailable if the litigation alleged the officer or director engaged in *any* affirmative conduct on which

12

the litigation was based. Finally, this construction is contrary to the evidence that, before the present controversy arose, Foundation agreed to advance legal fees to Guess to defend the action even though there were allegations Guess had engaged in affirmative conduct on behalf of Foundation, which provides evidence that Foundation understood the language called for indemnity notwithstanding the allegations that Guess had engaged in affirmative conduct on behalf of Foundation. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 ["[a] party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean"].)

We conclude there was substantial evidence to support the interpretation that the indemnity clause required Foundation to indemnify Guess for legal fees (at least to the extent those fees were attributable to defending Foundation's interests in the federal civil suit rather than to defending actions taken on behalf other xélan entities enmeshed in the federal civil suit) even though the federal civil suit alleged, in part, that Guess's actions in his capacity as an officer or director of Foundation gave rise to the litigation against Foundation and Guess.

Foundation also briefly asserts it was error to award indemnity because the focus of the federal civil suit was Guess's alleged perpetration of a tax fraud, which is excluded from the indemnity clause because it does not satisfy the good faith/best interests

13

condition to indemnity.[4]  However, this contention ignores that the trial court rejected Foundation's claim Guess had not acted in good faith and in a manner he reasonably believed to be in the best interests of Foundation, and Foundation has forfeited any contention that the trial court's finding on this issue is unsupported by the evidence. When an appellant challenges a finding for insufficiency of the evidence to support it, the appellant is required to set forth in the appellant's opening brief all the material evidence on that issue or finding and not merely evidence favorable to his or her position. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  "In furtherance of its burden, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment.  [Citation.]  Further, the burden to provide a fair summary of the evidence 'grows with the complexity of the record.  [Citation.]' "  (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)

An appellant must state fully, with transcript citations, the evidence claimed to be insufficient to support the trial court's findings.  (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.)  Unless this is done, the asserted error is deemed waived.  (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881.)  "An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding,

---

4       Foundation also argues the trial court's interpretation violates Civil Code section 2773, which provides, "An agreement to indemnify a person against an act thereafter to be done, is void, if the act be known by such person at the time of doing it to be unlawful."  Foundation cites nothing to suggest this assertion was interposed below, and an argument not raised at trial may not be raised for the first time on appeal.  (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.)

14

particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410.) Furthermore, "[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable" (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218), and a failure to do so permits a reviewing court to deem waived any substantial evidence contention. (*Ibid.*) Based on our review of the record on appeal, Foundation has not set forth a sufficient statement of facts stating *all* of the *material* evidence, both favorable and unfavorable, on the issue of whether Guess's actions satisfied the good faith criteria. By way of example only, the trial court cited evidence that (1) Guess testified he believed his actions on behalf of Foundation were appropriate, (2) his acts on behalf of Foundation were vetted by legal counsel for Foundation, and (3) his acts were approved by Foundation's Board. Moreover, although the federal civil suit alleged fraud, the federal court denied the government's request for a preliminary injunction based in part on its conclusion the government could not show "likely success on the merits" and, after the suit containing the allegations of fraud was dismissed, the federal court awarded attorney fees based (in part) on the finding the "government's legal and factual position on the scope and basis of the pre-trial injunctive relief . . . was not substantially justified." (*U.S. v. Guess* (S.D. Cal. 2005) 390 F.Supp.2d 979, 989.) These facts are relevant to (and supportive of the finding on) the issue of whether the good faith/best interests condition was satisfied but are almost entirely ignored in Foundation's opening brief. Instead, Foundation has cited only the evidence it contends would support its position that Guess did *not* act in good

15

faith. Foundation's appellate assertion that the indemnity award should be reversed because the good faith/best interests condition was not satisfied is deemed forfeited.

### B. The Loan Claim

Foundation asserts the judgment must be reversed because there was no evidence Guess was "liable to pay or repay any attorney fees" to Chicoine & Hallett or to Mr. Lipman's firm, and therefore the indemnity obligation of Foundation under the bylaws never arose. However, the parties did not dispute below that Guess was billed by the attorneys for services rendered in connection with the federal civil suit, and Guess testified he paid the bills of those firms and was able to fund those payments by borrowing money. Because the bylaws required Foundation to indemnify Guess "against all reasonable expenses and liabilities, including counsel fees, necessarily *incurred*" by Guess, there was substantial evidence to support the conclusion Guess "incurred" (and indeed paid) counsel fees within the meaning of the bylaws.

Foundation's argument is that because Guess *borrowed* from third parties to fund the payments, Foundation is somehow excused from its obligations to reimburse Guess for the attorney fees he incurred absent proof that Guess had repaid (or remained liable to repay) those loans. Foundation cites no pertinent authority for this contention--i.e. that Foundation was excused from its obligations because Guess was able to call on collateral sources to help him pay the liabilities ultimately owed by Foundation--and analogous law undermines Foundation's argument.

In *Arambula v. Wells* (1999) 72 Cal.App.4th 1006, a plaintiff was injured by a tortfeasor and one of the obligations imposed on tortfeasors is to pay the plaintiff any lost

16

earnings resulting from the injury. However, the trial court instructed the jury not to award damages for lost earnings because the plaintiff's employer was a family business run by plaintiff's brother, and the brother gratuitously continued to pay plaintiff even though plaintiff could not work. Although the brother "wished" to be reimbursed, there was no explicit requirement or agreement by plaintiff to refund the money, and the trial court reasoned that absent proof the plaintiff was obligated to reimburse his employer, the plaintiff could not recover lost wages because he had no lost wages. (*Id*. at pp. 1008-1009.) The appellate court reversed, concluding it was error to instruct the jury not to award plaintiff damages for lost earnings merely because the injured party had collateral sources willing to assist him through difficult times. The appellate court reasoned the collateral source rule should be applied equally to charitable giving as to other sources because, among other reasons, it would encourage charitable giving, it would preclude the obligor from gaining a windfall and defeating the donor's intended object of the gift, and because the injured party (if fully compensated) may be motivated to repay the donor even though under no legal compulsion to do so. (*Id*. at pp. 1012-1014.)

The same rationale applies here. There is substantial evidence Guess "incurred" legal fees within the meaning of Foundation's bylaws, and there is substantial evidence he in fact paid those bills. The mere fact Guess's friends and family agreed to loan him money to assist him through financially difficult times, which he agreed to repay "when able," would become a windfall to Foundation if it could rely on their charity to escape its obligation to indemnify Guess. Because Foundation cites no contrary legal authority, we

17

conclude that *how* Guess funded payment of the legal fees is irrelevant to Foundation's obligation (under its bylaws) to pay the legal fees he incurred.

C. The Evidentiary Claim

Foundation asserts the court erred when it overruled Foundation's objection to admission into evidence of the bills of Chicoine & Hallett. Guess offered the bills as business records (admissible under the business records exception to the hearsay rule codified in Evid. Code, § 1271) along with a declaration from a custodian of records authenticating the bills. Foundation objected to the bills and asserted the proffered declaration authenticating the bills was insufficient because she lacked personal knowledge as to the accuracy of each entry within the bills.

Foundation asserts on appeal that, before a document may be admitted under the business record exception to the hearsay rule embodied in Evidence Code section 1271, the custodian of records must lay the requisite foundation specified in subdivisions (a) and (b) of that section, that foundation must be provided by *live* testimony from the custodian at trial, and the requisite foundation may *not* be established by declaration because the declaration is itself hearsay for which no exception exists. Foundation's argument is meritless. When copies of business records are produced pursuant to a subpoena duces tecum, the records are admissible at trial if accompanied by a declaration from the custodian who avers the same foundational facts (e.g. the foundational facts required by Evid. Code, § 1271) as the custodian would have been required to establish by live testimony if called as a witness at trial. (Evid. Code, §§ 1560-1562.) Foundation makes no effort to show the requisite procedures under Evidence Code section 1560 et

18

seq. were not followed, or that the contents of the custodian's declaration lacked some essential foundational fact for admission of the business records if that custodian testified to the same facts at trial. We conclude the trial court did not err by admitting the bills of Chicoine & Hallett into evidence.

## DISPOSITION

The judgment is affirmed. Guess is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.