Filed 10/30/13  West v. Biston CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PARKER WEST et al., | B236837 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC449864) |
| v. | |
| AARON BISTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Robert Hindin & Associates and Robert M. Hindin for Defendant and Appellant.

Egerman & Brown, Mark Egerman and Lee A. Egerman for Plaintiffs and Respondents.

_____

**INTRODUCTION**

This action arises out of a landlord-tenant dispute. Appellant Aaron Biston brought an unlawful detainer (UD) action against respondents Parker and Jean West. After the Wests prevailed in the UD action, they initiated this action for malicious prosecution and other causes of action against Biston and another defendant. The jury returned a special verdict in favor of the Wests and against Biston on the malicious prosecution claim. The trial court subsequently entered judgment based on the special verdict. Biston appeals the judgment.

Biston contends that as a matter of law he had probable cause to initiate and maintain the UD action. He further argues that it was reversible error for the trial court to submit the determination of probable cause to the jury. Alternatively, Biston argues there was no substantial evidence to support two of the jury's findings, namely the findings that (1) Biston had not relied, in good faith, on the advice of his legal counsel and (2) Biston did not make a full, fair and complete disclosure to his counsel of all of the pertinent and material facts. For reasons we shall explain, we reject all of Biston's arguments and affirm the judgment.

**FACTS**

In the late 1980's, Parker and Jean West began living in an apartment in a four-unit building in Beverly Hills. They rented the apartment pursuant to an oral lease with their friend Frieda Fritz, the landlord at the time.

The apartment was subject to the rent control provisions of the Beverly Hills Municipal Code. When this case went to trial, the Wests were paying approximately $560 per month in rent, which is about one-third the market rate for similar apartments.

Pursuant to their oral lease, the Wests were permitted to use a parking space in the apartment building's garage. The Wests used that space to store numerous items, including fire extinguishers and ammonium phosphate, a chemical used in fire extinguishers. Parker West was in the business of selling and servicing fire extinguishers. Ms. Fritz was aware of the contents stored in the Wests' parking space and did not object to it.

2

In approximately 2008, Bank of America acquired the apartment building where the Wests resided. On December 4, 2008, the Wests signed a tenant estoppel certificate. The certificate stated that "the original Lease remains in full force and effect and constitutes the entire agreement between Tenant and Landlord," except for "modifications, amendments, addendums, assignments, extensions, and/or preferential rights or options to purchase/lease" listed in a blank space. The Wests listed nothing in that space. Biston received a copy of the certificate in about December 2008.

In April 2009, Biston purchased the apartment building. Biston's business plan was to entice the tenants to voluntarily leave and to conduct a major renovation of the building. After the renovation, Biston intended to lease the four units at rental rates considerably higher than the rates the previous landlord charged.

The tenants in three of the four units left. One tenant moved to Ireland. Another accepted a payment of $25,000 to vacate the premises. A third tenant left so that Biston, as the owner, could reside in the unit. Biston paid this tenant approximately $15,000.

The Wests did not leave, despite Biston's $30,000 offer. According to the Wests, after they declined his offer, Biston engaged in a campaign of harassment designed to pressure them to vacate the premises. For example, Biston allegedly caused the radio in the apartment under the Wests' residence to be played loudly all night for three nights. He also allegedly caused a floodlight to shine in the Wests' bedroom window for three nights and unnecessarily cut off heating, electricity and water utilities for extended periods of time. Biston denies that he ever harassed the Wests.

After Biston acquired the property, he became aware that the Wests stored fire extinguishers and other personal property in their garage space. Biston did not object to the storage of these items in the garage at any time before February 2010.

On February 9, 2010, Earl Haines of Haines Insurance Agency, Biston's insurance agent, sent a letter to Biston. The letter stated: "A recent inspection of [Biston's apartment building] has found that there exists a very dangerous situation in the garage area. The inspector found in [the West's garage space] hazardous materials pretty much stored floor to ceiling. He found about fifty to sixty fire extinguishers, old tires, piles of

3

old clothes, 20-30 suitcases . . . and ammonium phosphate. . . . These things among other items almost too numerous to mention has created a situation that is unacceptable to the insurance carrier. [¶] All these items must be removed at once. It is a requirement of your insurance that this property be maintained in a safe condition. Obviously, you are in violation of that requirement here." The letter concluded: "If this situation is not remedied your policy will be set up for cancellation. The carrier has informed me that they wish to re-inspect in two weeks time."[1]

On February 11, 2010, Biston sent a letter to the Wests attaching Haines's letter and requesting that they remove items from the garage within seven days. On February 19, 2010, Biston served a three-day notice to perform or quit. The notice stated the Wests were required to cure the "violations" of the lease listed in Haines's letter within three days, or move out of the premises.

In response, the Wests disposed of a substantial number of items they were storing in the trash. They also moved a great number of things from the garage into a storage space at a public storage facility. The Wests, however, still left many items in the garage, including fire extinguishers.

The Wests' efforts were not enough to appease Biston. Although there is nothing in the record indicating his insurance carrier or agent inspected the garage after the Wests emptied much of its contents, or at any time after Haines sent his letter to Biston, Biston commenced the UD action by filing a complaint in superior court on or about March 10, 2010.

---

[1]     The letter does not specify the identity of the inspector. It also does not state whether Biston requested the alleged inspection. Further, there is nothing in the record indicating Biston had any direct communications with his insurance carrier regarding this issue.

On June 7 and 16, 2010, while the UD action was pending, the Beverly Hills Fire Department conducted two inspections of the garage. Both times the fire department found no violations of any laws or regulations, including the Uniform Fire Code. The fire department provided Biston with a complaint log and other documents regarding its inspections. The complaint log stated that Biston "would like an inspection done of his garage to satisfy his insurance policy." The log further stated that "all storage [at the garage] was orderly – no present fire hazard at time of [the June 7, 2010] inspection." The log further stated that at Biston's request, the fire department conducted a second inspection on June 16, 2010, and again concluded that "no violations [were] found."

A narrative of the first inspection written by the fire marshal indicated that fire extinguishers and a "small pressurized cylinder of unknown type of product" were found in the Wests' garage space. The fire marshal concluded, however, that the inspection "revealed nothing remarkable" and that there were "No Violations."[2]

There is nothing in the record indicating that Biston advised his insurance agent or insurance carrier about the results of the fire department's inspections. There is no evidence that Biston received any communications from his insurance agent or insurance carrier regarding the Wests' storage of items in the garage after Haines's letter of February 9, 2010. Biston's insurance policy was not cancelled.

In July 2010, Biston filed his second amended complaint in the UD action. This was his operative pleading. The second amended complaint alleged that the Wests violated the terms of the oral lease by failing to remedy the violations outlined in Haines's February 9, 2010, letter.

---

[2] According to Parker West, the fire extinguishers and the ammonium phosphate were not flammable. The Wests contend they did not store anything hazardous in the garage.

A jury trial on Biston's UD action was held in September 2010. The jury returned a special verdict in the Wests favor, specifically finding that they did not breach their oral rental agreement with Biston "by their storage of property and materials in their portion of the detached garage."[3] Based on this special verdict, the trial court entered a judgment in the UD action in the Wests' favor.

About a month later, the Wests commenced this action for malicious prosecution and other causes of action against Biston and Tim Warren, an individual who assisted Biston in remodeling the apartment building. A jury trial was held on the Wests' action in July 2011. Before the matter was submitted to the jury, Biston filed a motion for nonsuit. The trial court initially granted the motion with respect to the Wests' malicious prosecution cause of action on the ground that Biston had probable cause to initiate the UD action. On the following day, however, the trial court vacated its earlier ruling and denied the motion. The court found that while Biston had probable cause to initiate the UD lawsuit, the jury needed to resolve facts "before the court could make the ruling as to whether or not the continuation of the prosecution of the case was improper."

The trial court thus submitted the matter to the jury with instructions regarding malicious prosecution, including an instruction regarding probable cause.[4] The jury

---

[3] Biston pursued his UD action under the theory that the Wests failed to perform conditions or covenants of the oral lease other than the failure to pay rent. (Code Civ. Proc., § 1161, subd. (3).) He did not pursue a UD claim on the ground that the Wests were committing or maintaining a nuisance. (Code Civ. Proc., § 1161, subd. (4).)

[4] The probable cause instruction stated: "To constitute the probable cause prong for initiation or maintenance of the civil proceeding against Parker and Jean West, the evidence must establish that: one, Aaron Biston *believed* at the time he commenced the unlawful detainer action that Parker and Jean West breached the term of the oral rental agreement; two, Aaron Biston *believed* at the time he commenced the unlawful detainer action that Parker and Jean West, by storing business and personal items of property, were committing a nuisance; three, Aaron Biston *believed* at the time he commenced the unlawful detainer action that provisions of the Beverly Hills Municipal Code 4-5-501 through 4-5-508 allowed him to bring the action; four, Aaron Biston *in good faith* sought the advice of an attorney before commencing and obtaining the civil proceeding against Parker and Jean West; five, Aaron Bison made a full, fair, and complete disclosure to that attorney of all the pertinent and material facts of which Aaron Biston had knowledge

6

returned a special verdict answering 42 questions. The jury found, inter alia, that Biston did not believe at the time he commenced the UD action and at all times he continued to prosecute it, that (1) the Wests breached a term of the oral rental agreement, (2) the Wests' storage of personal property in the garage constituted a violation of law or a nuisance, or (3) the Beverly Hills Municipal Code allowed him to commence and prosecute the UD action.

The jury further found that Biston did not in good faith seek advice of an attorney and that he did not make a full, fair and complete disclosure to his attorneys of all of the pertinent and material facts in the UD action. Additionally, the jury specifically found that Biston did not disclose to his attorneys that the Beverly Hills Fire Department inspected the property and the Wests' garage and found no violations on June 7, 2010, and June 16, 2010.

The jury concluded that Biston was liable for malicious prosecution. It awarded the Wests $112,701.29 in attorney fees and costs they incurred in the UD action. It also awarded Parker and Jean West $1 each as compensation for the emotional distress they suffered as a result of Biston's malicious prosecution.

---

tending to prove or disprove the civil allegation and thereafter Aaron Biston acted upon the advice of an attorney in belief of Parker and Jean West's civil liability for the alleged wrong; six, Aaron Biston disclosed to his attorneys that the Beverly Hills Fire Department inspected the property and the West garage and found no violations on June 7 and June 16, 2010. [¶] If you find from all the evidence that the foregoing facts are true, you must find that there was probable cause for the initiation or maintenance of the civil proceeding against Parker and Jean West. If you find that these facts are not true, you must find there was not probable cause for the initiation or maintenance of the civil proceeding against plaintiff." (Italics added.)

The jury additionally found that Biston acted with malice, oppression or fraud in commencing or maintaining the UD action. It awarded Biston $250,000 in punitive damages.[5]

Based on the special verdict, the trial court entered judgment. This appeal followed.

## DISCUSSION

Malicious prosecution is generally a disfavored cause of action because of its potential to impose an undue chilling effect on legitimate civil litigation and an ordinary citizen's willingness to report criminal conduct. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 966.) In order to prevail on a malicious prosecution cause of action, the plaintiff must prove (1) the underlying action brought against the plaintiff was determined on the merits in favor of the plaintiff; (2) the defendant brought or maintained the underlying action without probable cause; and (3) the defendant brought or maintained the underlying action with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 (*Sheldon Appel*).) Biston does not dispute that there was substantial evidence supporting the jury's finding that the first and third elements were satisfied. Instead, the focus of his appeal is on the second element – probable cause.

" 'Probable cause exists when a lawsuit is based on facts reasonably believed to be true, and all asserted theories are legally tenable under the known facts.' " (*Jay v. MaHaffey* (2013) 218 Cal.App.4th 1522, 1540.) The actual subjective belief of a litigant or his attorney is not relevant to whether probable cause exists. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 881 [in deciding whether there was probable cause, the court does not determine "whether the attorney subjectively believed that the prior claim was legally

---

[5]     The jury also found that Biston breached the implied covenant of good faith and fair dealing and the implied warranty of habitability, awarding $379.95 and $1,000, respectively, in damages for these causes of action. Additionally, the jury found that Biston acted with malice or oppression in breaching the warranty of habitability. The jury further found against the Wests on their causes of action for assault and battery against Warren and their causes of action for intentional and negligent inflection of emotional distress against Biston and Warren.

tenable"].)   Rather, the existence of probable cause is determined as a question of law by the court under an objective standard.  (*Id.* at pp. 875, 878.)

"Of course, there may be factual questions which require resolution before the objective standard can be applied.  For instance, there may be evidentiary disputes over the information and facts known to the defendant when it brought the prior action or it may be claimed the defendant was aware of information that established the lack of truth of his factual allegations.  In such circumstances the threshold question of the state of the defendant's knowledge of the facts must be resolved by the jury before application of the objective probable cause standard.  But when the state of the defendant's knowledge of the facts has been determined or is undisputed then his subjective belief in the legal validity of his claim is irrelevant and the only question is whether, based upon his knowledge, his action was objectively reasonable."  (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 569-570 (*Leonardini*); accord *Sheldon Appel*, *supra*, 47 Cal.3d at p. 881 ["when . . . facts known by the attorney are not in dispute, the probable cause issue is properly determined by the trial court under an objective standard; it does not include a determination whether the attorney subjectively believed that the prior claim was legally tenable"].)

1. *The Issue of Probable Cause Should Have Been Decided by the Court and Not the Jury*

The parties do not dispute the material *facts* Biston knew during the time period he initiated and maintained the UD action.  It is undisputed that in the oral discussions between the Wests and Ms. Fritz, Ms. Fritz never stated that the Wests were prohibited from storing their personal items and materials related to Parker West's business in the garage.  Biston does not claim he knew of any contrary information regarding the oral agreement. The parties agree that Biston knew about the letter from Earl Haines, the estoppel certificate executed by the Wests, and the documents prepared by the fire department.

9

It is also undisputed Biston knew that after Haines sent his letter, the contents of the Wests' garage space were reduced by the Wests. Moreover, it is undisputed that after Biston learned about the Wests' efforts and the fire department's conclusions concerning the items stored in the garage, he did not receive any further communications regarding the matter from his insurance agent or insurance carrier. Because the material facts known to Biston are not in dispute, the element of probable cause should have been determined as a matter of law by the trial court.

In opposition to Biston's nonsuit motion, the Wests argued the jury needed to determine facts about what Biston *believed*. For example, they argued the jury needed to determine whether Biston believed the Wests breached the oral agreement, whether he believed the Wests committed a nuisance, and whether he believed he was permitted under the Beverly Hills Municipal Code to maintain his UD action. The trial court submitted these and other questions regarding Biston's subjective belief to the jury. (See fn. 4, *ante*.) This was error. As we have explained, Biston's "subjective belief in the legal validity of his claim is irrelevant" to the issue of probable cause. (*Leonardini*, *supra*, 216 Cal.App.3d at p. 570.)

2. *There Was No Miscarriage of Justice Because Biston Did Not Have Probable Cause to Maintain His UD Action*

An erroneous decision by a trial court is not enough to reverse a judgment. The error must result in a miscarriage of justice, i.e., it must be prejudicial before we can reverse. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) The trial court's erroneous decision to submit the issue of probable cause to the jury did not result in a miscarriage of justice because as a matter of law Biston did not have probable cause to maintain his UD action.

The only legal basis for Biston's UD action was that the Wests breached their oral lease agreement by their storage of property and materials in the garage. Biston does not contend that the Wests breached any express provision of the oral agreement. Instead, he contends the Wests breached an implied covenant to "not allow hazardous conditions to exist that would jeopardize the landlord's ability to obtain and maintain building

10

insurance." Biston does not, however, cite any California case or statutory law—and we have found none—that supports the existence of such an implied covenant.

Arguably a tenant's maintenance of "hazardous conditions" at the leased property is a breach of the implied covenant of good faith and fair dealing. The implied covenant prohibits both parties to a contract from doing anything " ' "which will injure the right of the other to receive the benefits of the agreement." ' " (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120.) "This covenant is 'read into contracts "in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." ' " (*Ibid.*)

The foundation upon which Biston's breach of implied covenant claim rests is the allegation that the materials stored in the garage were so hazardous that they injured his right to receive benefits under the lease. Under the undisputed facts and circumstances in this case, however, no person in Biston's shoes could reasonably believe this allegation was true.

The sole basis for Biston's claims that the materials stored in the garage were hazardous and that his insurance might be cancelled was the Haines letter. But after Biston received the letter, the circumstances changed. The Wests stored a large number of items in public storage, and they threw many items away. Moreover, at Biston's request, the fire department inspected the garage twice in order to "satisfy his insurance policy." On both occasions the fire department concluded that there were no violations of applicable law and no safety concerns.

Yet there is nothing in the record indicating Biston had any communications with his insurance agent or insurance carrier regarding his property insurance after the Wests' attempts to remedy the alleged problems and the fire department's inspections. There is also nothing in the record indicating Biston's insurance carrier re-inspected the garage or considered cancelling his policy at any time after Biston received Haines's letter. Accordingly, by the time the UD action went to trial, a person in Biston's shoes could not reasonably believe that the materials the Wests stored in the garage were so hazardous

11

that his property insurance would be terminated, or that the storage of such materials was a breach of the oral lease agreement.[6]

We recognize that establishing probable cause is a very low bar to clear. This is one of those rare cases, however, where the defendant in a malicious prosecution action did not clear the bar.

Biston argues that he had probable cause to maintain the UD action as a matter of law because the trial court in that action denied the Wests' motion for summary judgment. The denial of the motion, Biston contends, necessarily established that his claim was legally tenable. We disagree.

"[T]he denial of a motion for summary judgment in the underlying action does not itself preclude a subsequent malicious prosecution claim." (*Hufstedler, Kaus & Ettinger v. Superior Court* (1996) 42 Cal.App.4th 55, 69.) A motion for summary judgment can be denied for various grounds, some of which are not based on the merits. The motion can be denied, for example, on the ground that the moving party did not include an adequate separate statement setting forth the material facts which the moving party contends are undisputed. (Code Civ. Proc., § 437c, subd. (b)(1).) If the motion is denied for this or some other procedural defect, the ruling does not establish as a matter of law that probable cause existed for the underlying lawsuit. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811. 823.)

Here, several witnesses testified that the trial court in the UD action denied the Wests' motion for summary judgment. But there was no evidence regarding the grounds upon which the court denied the motion. Based on this record, we cannot conclude that the trial court's denial of the Wests' motion for summary judgment established probable cause for Biston's UD action as a matter of law.

---

[6] Biston contends he could reasonably believe the storage of materials in the garage violated the oral lease agreement because the Wests signed the estoppel certificate. We disagree. The estoppel certificate states nothing about the storage of materials in the garage. Moreover, for over a year after he purchased the apartment building, Biston was aware the Wests stored numerous items in the garage but never objected or claimed they were in breach of the lease.

12

Biston contends that it was the Wests' burden to establish the grounds upon which their motion was denied.  We disagree.  To establish that Biston lacked of probable cause to pursue the UD action, the Wests did not need to show that they filed a motion for summary judgment, or that the court's denial of their motion was not on the merits.  Thus the trial court's ruling on their motion was not part of their prima facie case.  The ruling was relevant, if at all, to a potential affirmative defense Biston could have asserted.  Biston therefore had the burden to show the grounds for the trial court's ruling.  Because he failed to meet that burden, he did not establish his affirmative defense.

       3.     *There Was Substantial Evidence to Support the Jury's Findings Relating to Biston's Advice of Counsel Defense*

If a party initiates or maintains a lawsuit pursuant to the advice of counsel, he will not be liable for malicious prosecution even if the elements of the tort have been satisfied.  (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 53-54.)  In order to prevail on an advice of counsel defense, the party must establish, inter alia, that (1) he provided full disclosure of all relevant facts to his counsel and (2) he sought counsel's advice in good faith.  (*Id.* at pp. 53-54.)  In the special verdict, the jury found that Biston failed to establish either of these elements.  Biston contends there was no substantial evidence to support the jury's findings.  We reject this argument.

       a.     *Standard of Review*

We review a jury's findings in a special verdict under the substantial evidence test.  (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 816.)  Under this test, we make all reasonable inferences in support of the findings and cannot reweigh the evidence or second-guess the jury's credibility determinations.  (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1036.)  If substantial evidence is found to support the jury's findings, it is of no consequence that the jury "believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874, italics omitted.)

13

b.     *Biston Forfeited His Substantial Evidence Arguments*

We must presume that the record contains evidence to support every finding of fact of the jury unless the appellant proves otherwise.  (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 737 (*Schmidlin*).)  "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable."  (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 (*Doe*).)  Further, a party who challenges the sufficiency of the evidence must present the facts in a light most favorable to the prevailing party.  (*Schmidlin*, at pp. 737-738.)

The appellant must also provide a summary of the significant facts in the record and provide references to the record to support his or her claims regarding the evidence.  (Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C).)  It is not up to the court to search the record to determine whether the appellant's assertions about the evidence are true.  (*Schmidlin*, *supra*, 157 Cal.App.4th at p. 738.)  When an appellant fails to fully analyze the evidence with specific citations to the record, or only presents facts and inferences favorable to his or her position, the contention that the findings are not supported by substantial evidence is deemed forfeited.  (See *id.* at pp. 737-738; *Doe*, *supra*, 177 Cal.App.4th at p. 218.)

Here, Biston's substantial evidence argument consisted of one sentence:  "There was no substantial evidence to support the jury's finding that Biston had not relied, in good faith, on the advice of his legal counsel or that his counsel did not know all the pertinent facts giving rise to probable cause for the unlawful detainer action."  Biston did not, however, summarize the evidence unfavorable to his position, nor did he provide citations to the record regarding such evidence.  Biston thus forfeited his substantial evidence arguments on appeal.  In any case, as we explain *post*, even assuming Biston did not forfeit these arguments, we would reject them on the merits.

14

c. *There Was Substantial Evidence Supporting the Jury's Finding That Biston Failed to Advise His Counsel of Relevant Facts*

Attorney Rebecca Hufford-Cohen initiated the UD action on Biston's behalf. At some point before trial, attorney Stephen Feldman substituted as Biston's counsel. The Wests did not sue Feldman or Hufford-Cohen for malicious prosecution.

Feldman testified at the malicious prosecution trial that Biston never gave him a copy of the Beverly Hills Fire Department reports regarding the inspections of June 7 and June 16, 2010. He further testified that the first time he saw these reports were at the UD trial. Additionally, Feldman stated that Biston did not provide him "any information as to the Wests's right to store items in their garage," and did not tell him how long the Wests had been storing items in the garage. Feldman's testimony constituted substantial evidence supporting the jury's finding that Biston did not make a "full, fair and complete disclosure to his attorneys" in the UD action "of all the pertinent and material facts of which [he] had knowledge which tended to prove or disprove the allegations in the Unlawful Detainer Action."

d. *There Was Substantial Evidence Supporting the Jury's Finding That Biston Did Not Seek Advice of an Attorney in Good Faith*

Biston admitted at trial that he wished the Wests to vacate the premises so that he could collect substantially higher rent payments. Parker and Jean West provided extensive testimony about Biston's harassment after they refused to vacate the premises. Further, it was undisputed that the fire department found that the Wests did not violate any laws and did not maintain an unsafe condition by storing items in their garage. It is further undisputed that Biston knew of the fire department's findings, but pursued the UD action anyway. From this evidence, the jury could have reasonably found that Biston maliciously pursued the UD action and did not seek advice of counsel in good faith.

15

## DISPOSITION

The judgment is affirmed.  The Wests are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.

ALDRICH, J.