[No. B206272. Second Dist., Div. Eight. Aug. 31, 2009.]

JOHN DOE, Plaintiff and Appellant, v.
THE ROMAN CATHOLIC ARCHBISHOP OF CASHEL & EMLY,
Defendant and Respondent.

**COUNSEL**

Manley & Stewart, John C. Manly and Vince W. Finaldi for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Nicholas W. Heldt, Cynthia H. Plevin and Ryan L. Harrison for Defendant and Respondent.

## OPINION

**RUBIN, Acting P. J.**—Plaintiff John Doe appeals from the trial court order quashing service of summons and process on the Archdiocese of Cashel & Emly in Ireland. We hold that plaintiff has waived the issue by his failure to fairly and completely set forth, discuss, and analyze the relevant facts under the applicable substantial evidence standard of review. We alternatively hold that substantial evidence supported the trial court's ruling that defendant had insufficient contacts with the State of California to support an exercise of either general or specific jurisdiction.

## FACTS AND PROCEDURAL HISTORY

1. *Jurisdictional Facts*

John Doe sued the Roman Catholic Diocese of Stockton and Oliver O'Grady, one of its former priests, alleging that O'Grady sexually molested him in 1969 and 1970, when plaintiff was approximately 11 years old. Although plaintiff eventually settled with the Stockton archdiocese, he later added as a Doe defendant the Archdiocese of Cashel & Emly, located in County Tipperary, Ireland.[1] According to plaintiff, Cashel & Emly owned and operated Saint Patrick's College, the seminary that trained and ordained O'Grady and sent him to Stockton knowing he was a child molester.

Cashel & Emly, acting through Archbishop Dermot Clifford, moved to quash service of the summons on the ground it was not subject to the personal jurisdiction of the California courts. The trial court permitted plaintiff to take discovery on the jurisdictional issues. Distilled, the evidence showed that O'Grady, who was born and raised in Ireland and was living there at the time, entered the seminary in 1964. In 1965, he was incardinated into the Stockton archdiocese. According to plaintiff's expert, incardination is the process by which a diocese accepts a candidate for priesthood. The Stockton archdiocese paid Saint Patrick's for O'Grady's tuition and living expenses. O'Grady completed his seminary studies in 1971, and was ordained as a priest by Thomas Morris, the then current archbishop of Cashel & Emly. Ordination is the ceremony by which one becomes a priest, and is thereby vested with the powers and duties of priesthood. O'Grady then moved to the Stockton area and began serving as a priest.

Archbishop Clifford's supporting declaration said he became affiliated with the Archdiocese in 1985 and became its archbishop in 1988. Saint Patrick's is

---

[1] We will refer to the Archdiocese of Cashel & Emly either as the Archdiocese or as Cashel & Emly.

located within the geographical boundaries of the Archdiocese but is a "juridically separate" entity held in trust by a wholly distinct board of trustees. Clifford is a member of the Saint Patrick's board, as are other clergy members from two dioceses. The college no longer operates as a seminary, offering instead a traditional collegiate curriculum. When Saint Patrick's was a seminary, it was one of six in Ireland that educated prospective priests for ordination throughout Ireland's 26 dioceses, as well as in foreign countries. According to Clifford, O'Grady was never a priest, employee, volunteer, agent, or representative of Cashel & Emly. Nor did the Archdiocese have any contact of any kind with O'Grady. The Archdiocese did not own property or conduct business operations in California, and had never sent an agent or representative to the state in order to conduct business on its behalf. Clifford said he had travelled to California twice in 1991 at the invitation of an American nonprofit entity that was trying to raise funds to support seminary education in Ireland. While Saint Patrick's College might have received money from such fundraising, the Archdiocese never did.

Plaintiff opposed the motion to quash with a declaration from Patrick Wall, a Catholic priest and Benedictine monk who claimed to have expertise in canon law through his service as a "judge/advocate" on the judicial tribunal for the Archdiocese of St. Paul and Minneapolis. Wall's declaration included the following assertions: (1) excerpts from an attached copy of the 2005 Irish Catholic Directory listed Cashel & Emly as the entity that owned, operated, and controlled Saint Patrick's College; (2) excerpts from an attached copy of a 2004 book titled Irish Priests in America said the college was a seminary for mostly overseas dioceses, that it had ordained 511 priests who served in the United States, and that as of 1997, 36 priests educated at Saint Patrick's were serving in California; (3) church records showed that O'Grady entered the seminary in 1964, was incardinated to the Stockton archdiocese in 1965, and arrived in Stockton as a newly ordained priest in 1971. The normal practice would have required the Stockton diocese to support O'Grady's education by way of payments to Saint Patrick's for room, board, and tuition; and (4) a petition for laicization (removal from the priesthood) that was filed by the Church in the 1990's, listed a psychic defect under canon 1044 of the Catholic Church's Code of Canon Law as the ground for the petition. Wall interpreted that to mean the petition alleged O'Grady had committed a crime or had a mental disorder before he was ordained that had to have been known by the archbishop who ordained him.

Plaintiff's counsel, Venus Soltan, submitted a declaration claiming that Wall had reviewed and translated the certificate showing O'Grady's ordination into the priesthood, and had translated it to mean that O'Grady was

ordained by the then archbishop, who assigned O'Grady to serve the Stockton diocese. Those statements do not appear in Wall's declaration, however. Interrogatory responses from the Archdiocese also showed that the Stockton archdiocese paid O'Grady's educational and living expenses while he attended Saint Patrick's.

The Archdiocese countered with a reply brief supported by the declaration of Anthony Anscombe, a partner in the law firm representing the Archdiocese. Anscombe declared that as part of his coursework for his college degree in classical languages, he took numerous advanced level courses in Latin literature. He also taught Latin at the high school level some years before. Anscombe interpreted the ordination certificate to mean that O'Grady was ordained by the Archdiocese "for the benefit of service" in the Stockton diocese, but it did not mean that Cashel & Emly had *assigned* him to the Stockton diocese.

The parties submitted supplemental briefs and declarations. Soltan submitted an 81-paragraph declaration, along with supporting documents, on behalf of plaintiff. Much of Soltan's declaration purported to describe how the Archdiocese operated; the nature of its structure and affiliation with Saint Patrick's; how the Archdiocese came to know that O'Grady was already molesting young boys while he studied at Saint Patrick's; and the meaning and effect of the proceedings to remove O'Grady from the priesthood. Wall submitted another declaration describing how, in his view, Saint Patrick's was in fact controlled by Cashel & Emly. William Smith, the author of Irish Priests in the United States: A Vanishing Subculture (2004), submitted a declaration that as of 1997, 176 alumni of Saint Patrick's served as priests in 48 United States dioceses, with 64 of those in California, and 10 of those in the Stockton diocese.

The Archdiocese submitted the declaration of Nicholas P. Cafardi, a lawyer, law professor, and former dean of both Duquesne University School of Law and the law school at the University of Pittsburgh. Cafardi also had worked as counsel for the Pittsburgh diocese and obtained a degree in canon law. Cafardi reviewed the Wall declarations and supporting documents, and said he disagreed with Wall's conclusions. According to Cafardi, Wall "seriously misrepresent[ed]" the meaning of the petition to remove O'Grady from the priesthood. Instead, Cafardi said the various documents involved in the proceeding showed that an attempt was made to remove O'Grady from the priesthood for having molested two boys, and that the petition was dropped when O'Grady's request for voluntary laicization was granted by the Pope. Even so, a psychic defect could not have been grounds for laicization and that nothing in the documents or canon law could be interpreted to mean

that the archbishop of Cashel & Emly would have known such a defect existed when O'Grady was ordained.

Fathers Ronald Bowers and Daniel J. Ward, who served on the judicial tribunal of the Archdiocese of St. Paul and Minneapolis and who knew plaintiff's expert Wall, said Wall was never a judge/advocate of the tribunal as he had claimed. Instead, he was an intern who functioned as a law clerk, drafting documents and taking notes under the guidance of an actual advocate or judge. His duties in that regard were limited solely to marriage annulment cases. Both questioned the extent of his knowledge of canon law.

The Archdiocese also objected on various grounds to numerous portions of all the declarations submitted by Soltan and Wall up to that point. As to Soltan, most of the objections went to her lack of personal knowledge of, or otherwise lay a foundation for, the factual assertions she made. Objections were also made on grounds of hearsay, the best evidence rule, and others. Similar objections were made to Wall's declarations, as well as a general objection that Wall's "falsification" of his qualifications showed he lacked sufficient knowledge of canon law to qualify as an expert on the subject. Wall responded with a declaration claiming that Bowers and Ward were unaware of his true functions and that he was in fact qualified in canon law. Wall also disagreed with Cafardi's interpretation of the record. John Manly, a partner in the law firm representing plaintiff, also attested to Wall's qualifications.

### 2. *The Trial Court's Ruling*

The trial court sustained the Archdiocese's objections to 15 of the 25 paragraphs in Soltan's first declaration, and to 39 of the 81 paragraphs in her second declaration. The court sustained objections to three paragraphs and two exhibits from Wall's first declaration, but sustained none as to his second declaration. All other attachments to the declarations were considered, but summaries of those exhibits by Soltan and Wall were not. The court found that Wall was qualified to give an opinion on canon law, but, as the trier of jurisdictional facts, found that the expert declarations from the Archdiocese were more credible. The trial court then went on to find that Cashel & Emly was not subject to either general or specific jurisdiction by the California courts.

In concluding that California did not have general jurisdiction over the Archdiocese, the trial court found that it had no ongoing residence or relationships in California. Although plaintiff presented evidence that seminary students from Saint Patrick's regularly moved to California after ordina-

tion, and that the seminary maintained contact with those students, that was insufficient to establish general jurisdiction. The trial court noted that simply because "many ordained priests leave Ireland and go elsewhere does not subject the seminary and Cashel & Emly to jurisdiction everywhere."

As for specific jurisdiction, the court found there was no admissible evidence that the Archdiocese knew O'Grady had a propensity to molest children or that his ordination would put him in a position to do so wherever he went. The trial court found that Cashel & Emly "did not *expressly aim at or target* California as a location to send O'Grady upon his ordination. O'Grady was incardinated into the Stockton [diocese] in 1965, well before he was ordained." (Original italics.) O'Grady was merely a student at Saint Patrick's for several years, and was not its (and therefore not Cashel & Emly's) agent or employee. The court disagreed with Wall's interpretation of O'Grady's ordination certificate and found that Cashel & Emly had not assigned him to the Stockton diocese. Instead, in accordance with the declaration of Cashel & Emly's Latin-language expert, the certificate was best read as a statement that the Archdiocese ordained O'Grady "for the benefit of" the Stockton diocese. In short, the trial court found that the Archdiocese did not purposefully avail itself of California. It also found that asserting jurisdiction would not comport with fair play and substantial justice. The court declined to reach the issues whether (1) Saint Patrick's was owned or controlled by the Archdiocese or its archbishop during the relevant period; or (2) as a matter of Irish law, Cashel & Emly even existed as an entity.[2]

## DISCUSSION

### 1. *Principles of Personal Jurisdiction*

■ California's courts may exercise personal jurisdiction over a nonresident defendant on any basis not inconsistent with the Constitution of this state or the United States. (Code Civ. Proc., § 410.10; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons Companies*).) Personal jurisdiction over a nonresident defendant served with process outside the state satisfies constitutional due process requirements if the defendant has such minimum contacts with the state that

[2] We take this to mean that for the purposes of its analysis, the trial court assumed but did not decide that the Archdiocese controlled and operated Saint Patrick's and was an entity which, given the proper facts, could be subject to the jurisdiction of our courts. We will follow the same path, and for the purposes of our discussion, will make the same assumptions. Therefore, when we refer to Saint Patrick's seminary, we do so with the assumption that it was owned or controlled by the Archdiocese.

the assertion of jurisdiction does not violate traditional notions of fair play and substantial justice. (*Vons Companies*, at pp. 444–445, citing *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154].)

■ Personal jurisdiction may be either general or specific. General jurisdiction exists when a nonresident defendant's contacts in the forum state are substantial, continuous, and systematic. In short, the defendant's contacts are so wide ranging that they take the place of physical presence in the forum as a basis for jurisdiction. When general jurisdiction exists, the cause of action against the defendant does not have to be connected with the defendant's business relationship to the forum state. (*Vons Companies, supra*, 14 Cal.4th at pp. 445–446.)

■ If sufficient contacts for general jurisdiction do not exist, a nonresident defendant may be subject to a forum state's specific jurisdiction when the defendant has purposefully availed himself of that state's benefits and the cause of action is related to or arises out of the defendant's contacts with the state. (*Vons Companies, supra*, 14 Cal.4th at p. 446.) Specific jurisdiction exists when a nonresident defendant has purposefully directed his activities at a forum resident; derived benefit from his forum activities; or availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. (*Ibid.*) Once it has been determined that a nonresident defendant's contacts are sufficient to invoke specific jurisdiction, the court must still determine whether doing so comports with notions of fair play and substantial justice. Factors involved in this determination include the defendant's burden in appearing in the forum state, the forum state's interest in adjudicating the claim, the plaintiff's interest in obtaining convenient and effective relief in the state, and the shared interest of the several states in furthering fundamental substantive social policies. (*Id.* at pp. 447–448.)

When a defendant moves to quash service of process on the ground that it is not subject to the state's personal jurisdiction, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. If the plaintiff does so, the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable. When there is conflicting evidence, we will affirm the trial court's factual findings if they are supported by substantial evidence. If there are no evidentiary conflicts, the existence of jurisdiction is a legal question that calls for our independent review. (*Vons Companies, supra*, 14 Cal.4th at p. 449.)

■■■■■■■■■■■■■■■

2. *Plaintiff Has Waived the Issue by His Failure to Fully and Fairly Discuss the Conflicting Evidence Submitted by Cashel & Emly*

■ A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable. (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 737 [69 Cal.Rptr.3d 365].) Contrary to fundamental principles of appellate review, plaintiff has failed to do so. Instead, his opening brief sets forth only his version of the evidence, omitting any reference to the conflicting evidence submitted by Cashel & Emly, as described in our statement of facts. Plaintiff also failed to mention the many evidentiary objections that were sustained to his supporting declarations and documents, as well as the trial court's factual findings in granting the motion to quash.[3] Instead, plaintiff asserted in his opening appellate brief that the facts were *not* in conflict, calling for our independent review.

This deficiency in plaintiff's opening appellate brief was pointed out by the Archdiocese in its respondent's brief. In reply, plaintiff contends that no waiver occurred because although there is a conflict in the evidence as to whether the Archdiocese knew about O'Grady's propensity to molest children, there is no conflict in the evidence concerning its activities in California: accepting tuition and other college expenses from the Stockton diocese specifically for O'Grady, as well as from other dioceses throughout the state, in order to train priests for service in California. We disagree. Plaintiff's opening appellate brief argued that one of the primary grounds for asserting jurisdiction over Cashel & Emly was its knowledge of O'Grady's sexual predilections, and that argument was analyzed by plaintiff solely in reference to his one-sided version of the facts. It also ignores the trial court's findings that Cashel & Emly did not aim at or target California as a location for O'Grady once he was ordained, that O'Grady was merely a student at the seminary, and not its agent or employee, that the ordination certificate was best interpreted to mean that O'Grady had been ordained for the benefit of the Stockton diocese, and not that the Archdiocese had assigned O'Grady to Stockton, and that the Archdiocese did not purposefully avail itself of California. As made clear by part 1 of our discussion, *ante*, all of these findings factor into the jurisdictional analysis. None was mentioned, and the facts to support these findings were omitted. Because plaintiff has failed in his obligations concerning the discussion and analysis of a substantial evidence issue, we deem the issue waived. (*Schmidlin v. City of Palo Alto, supra*, 157 Cal.App.4th at p. 738.)

---

[3] As a result, any issues concerning the propriety of the trial court's evidentiary rulings are waived.

### 3. *We Alternatively Hold That the Motion to Quash Was Properly Granted*

The trial court found that Cashel & Emly was not subject to the general jurisdiction of the California courts because it had no ongoing residence or relationships in California and did nothing more than educate and ordain priests who then left for service here and in other states. Plaintiff argues for general jurisdiction almost in passing, contending in essence that the many priests in California who were educated at Saint Patrick's, and its receipt of tuition from California to pay for their education, shows systematic, continuous, and substantial business operations by Cashel & Emly through its seminary. The evidence supports the trial court's determination.

Clifford declared that the Archdiocese owned no property and conducted no business operations in California and had never sent an agent into the state to conduct business on its behalf. Cashel & Emly's Latin-language expert interpreted O'Grady's ordination certificate to mean that O'Grady had been ordained by Saint Patrick's for the benefit of the Stockton diocese, and should not be interpreted to reflect a decision by Cashel & Emly to assign O'Grady there. As a result, the evidence most favorable to the trial court's order shows that the Archdiocese, through Saint Patrick's, did nothing more than receive money from the Stockton diocese to pay the costs and expenses of O'Grady's education, and educated other priests who went on to serve throughout the United States, including California.[4]

By no stretch can such activities be considered so systematic, continuous, and wide ranging that the Archdiocese is subject to the general jurisdiction of our courts. (Cf. *Martin v. Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472 [108 Cal.Rptr. 23], cited by plaintiff [professional football player was scouted and recruited in California and was injured on the job while playing for Michigan-based football team; in action for nonpayment of contractually owed salary, general jurisdiction over team was proper because it scouted and recruited plaintiff in California, and derived substantial income from playing several teams within the state].)

The same is true in regard to specific jurisdiction. Plaintiff's case for this type of jurisdiction rests in part on Saint Patrick's receipt of O'Grady's

---

[4] Plaintiff contends, for the first time in his reply brief, that the trial court abused its discretion by disregarding Wall's final declaration and by finding Cashel & Emly's canon law experts more credible. We disagree. First, the issue is waived because it was only raised in the reply brief. (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1216–1217 [45 Cal.Rptr.3d 265].) Second, nothing in the record indicates that the trial court did not read or consider Wall's final declaration. Instead, it appears that the trial court simply found the Archdiocese's expert declarations to be more credible. Regardless, our inquiry is confined to determining whether the trial court's findings are supported by substantial evidence, and we conclude they are.

seminary expenses from the Stockton diocese, and in part on Cashel & Emly's alleged assignment of O'Grady to Stockton with knowledge of his propensity to molest children. Relying on *Archdiocese of Milwaukee v. Superior Court* (2003) 112 Cal.App.4th 423 [5 Cal.Rptr.3d 154] (*Archdiocese of Milwaukee*), another priest molestation case, plaintiff contends specific jurisdiction should have been found to exist.

A finding of specific jurisdiction was affirmed in *Archdiocese of Milwaukee* based on evidence that the Milwaukee archdiocese sent a known pedophile priest to California, and covered up the priest's problems, in an effort to rid itself of the priest. On those facts, the appellate court properly concluded that specific jurisdiction existed because the Milwaukee archdiocese expressly aimed at or targeted California, and because the defendant's contacts with California were sufficiently related to the plaintiff's claims. (*Archdiocese of Milwaukee, supra*, 112 Cal.App.4th at pp. 438–442.) Under the substantial evidence test, those facts are nowhere close to ours.

First, plaintiff admits in his reply brief that the evidence concerning Cashel & Emly's knowledge about O'Grady's propensity to molest is in conflict. This implicitly concedes that there was evidence Cashel & Emly knew nothing about O'Grady's propensity to molest children. Second, as already discussed, there was evidence to support the trial court's finding that the Archdiocese did not assign O'Grady to Stockton, and therefore did not target or aim him at California. Accordingly, plaintiff's reliance on *Archdiocese of Milwaukee* is misplaced.

As for Cashel & Emly's receipt of tuition money from the Stockton diocese, that "business contact" *might* have created specific jurisdiction in an action by that diocese against Cashel & Emly if Cashel & Emly misapplied the money or otherwise defaulted in regard to educating O'Grady.[5]

For instance, in *Regents of University of New Mexico v. Superior Court* (1975) 52 Cal.App.3d 964 [125 Cal.Rptr. 413] (*Regents*), the appellate court affirmed a trial court order granting the regents' motion to quash a cross-complaint brought by a California resident. That resident, Sanders, was the cinematographer of a film made in conjunction with a California nonprofit corporation devoted to the revival of lithography. The nonprofit was supposed to phase itself out and be replaced by a lithography institute at the University

---

[5] This statement is not a holding and suggests nothing more than that on those facts, specific jurisdiction is arguable.

of New Mexico. Portions of a Ford Foundation grant to accomplish this were sent by the California nonprofit to the university. The university also received a print of the film from the nonprofit and screened the film in California twice. Sanders contended the regents had received all of the nonprofit's assets, though the record showed otherwise.

If Sanders's dispute had arisen directly out of dealings relating to the film between himself and the regents, perhaps jurisdiction might have been proper, the appellate court suggested. However, the dispute had nothing to do with the regents' very limited contacts with the state, which consisted of receiving Ford Foundation funds through the nonprofit, and of showing the disputed film twice. As a result, specific jurisdiction did not exist. (*Regents, supra*, 52 Cal.App.3d at pp. 971–972; cf. *Brown v. Watson* (1989) 207 Cal.App.3d 1306 [255 Cal.Rptr. 507] [Texas law firm associated with California law firm to represent California resident in filing action in Texas; specific jurisdiction over Texas firm held proper when it failed to timely file action because that caused an effect in California].)

█ The *Regents* and *Brown* decisions both dealt with residents of sister states. Assuming personal jurisdiction over a nonresident defendant from another *nation* calls for increased caution, because a "high barrier of sovereignty tends to undermine the reasonableness of exercising personal jurisdiction in this state. [Citation.]" (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 109 [37 Cal.Rptr.3d 258].) "As a matter of fairness, federal constitutional principles prohibit a nonresident defendant from being brought before a California court as the result of random, fortuitous or attenuated contacts or because of the unilateral activit[ies] of a third party. [Citations.]" (*Id.* at p. 108.) █ Substantial evidence shows that Cashel & Emly did no more than accept tuition money and related expenses from the Stockton diocese for O'Grady's seminary training, much the same as any other school that is a passive recipient of a student's tuition from a nonprofit scholarship fund. There was also substantial evidence to support the finding that O'Grady was not an agent or employee of Cashel & Emly, Cashel & Emly did not know O'Grady had a propensity to molest children, and it did not assign or send him to Stockton. O'Grady's alleged acts of molestation were very much attenuated from Cashel & Emly's extremely limited contacts with California. There is no evidence, and plaintiff does not contend, that O'Grady's misdeeds were anything other than unilateral.

On this record, therefore, the trial court was amply justified in finding that Cashel & Emly was not subject to the general or specific jurisdiction of our courts.

## DISPOSITION

The order granting Cashel & Emly's motion to quash service of process is affirmed. Respondent shall recover its appellate costs.

Flier, J., and Bendix, J.,* concurred.

On September 24, 2009, the opinion was modified to read as printed above.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.