Filed 2/6/15  Marriage of Hendrix CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ELIZABETH and BRYAN HENDRIX. | |
| | D065084 |
| BRYAN E. HENDRIX, | |
| Appellant, | (Super. Ct. No. ED85573) |
| v. | |
| ELIZABETH P. HENDRIX, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Darlene A. White, Judge.  Affirmed.

Byran E. Hendrix, in pro. per., for Appellant.

Elizabeth P. Hendrix, in pro. per., for Respondent.

Appellant Bryan E. Hendrix (husband), appearing in propria persona as he did in the family law court, appeals an order denying his motion to set aside a stipulated judgment entered on May 28, 2013 (stipulated judgment) between him and his former

wife, respondent Elizabeth P. Hendrix (wife). Husband contends the court erred in refusing to set aside the stipulated judgment on the grounds of duress, undue pressure to settle and/or the lack of understanding that he was entitled to legal counsel before entering into the stipulation. Affirmed.

FACTUAL AND PROCEDURAL OVERVIEW

Wife filed a petition for dissolution of marriage in early March 2012. In mid-April 2013, wife sought a domestic violence retaining order, which included a request that husband move out of the family residence located in Lemon Grove, California (residence) and that he stay away from wife and their daughter, who was then 18 years of age but still in high school (daughter).

In connection with the restraining order, wife alleged husband in early April 2013 came into wife's bedroom and stated in front of wife and daughter, "'Since I'm schizophrenic, I could kill you.'" Wife also alleged she and daughter were fearful of husband because he previously had physically abused wife and had recently verbally abused daughter; he had "psychological disorders"; and he enjoyed possessing and displaying guns, including leaving a gun on the family couch. The record shows the court granted wife's request for a temporary restraining order and, after a continuance, set a hearing for May 28, 2013 to consider a permanent restraining order.

The record shows the parties met in the hallway of the courthouse and discussed settlement shortly before commencement of the May 28 hearing on the permanent restraining order. Wife at the time was represented by counsel, but husband was not. In any event, wife and husband entered into the (proposed) stipulated judgment, the terms of

2

which were memorialized on a "stipulation and order on request for order-short form" that was signed by both parties, wife's attorney and ultimately, as discussed *post*, by the court.

The (proposed) stipulated judgment provided that wife would dismiss the restraining order against husband; that wife "shall have exclusive possession of the parties' residence . . . and be responsible for all payments connected with such residence"; that wife "shall apply her best efforts to refinance the [residence] within two years of today"; that if wife was "able to refinance the home, it shall be awarded to wife as her sole and separate property"; that if wife was "unable to refinance, the home shall be sold and any proceeds divided equally among the parties"; that the court was to retain jurisdiction over the residence; that the parties shall "be awarded any and all personal property within their possession, including vehicles"; that each party shall be responsible for payments on such vehicles; that wife "is to be awarded her Sharp retirement account and the Vanguard account as her sole and separate property"; that each party shall be responsible for their own debts; that each party "waives the right to spousal support from the other" and the court's jurisdiction shall be "forever terminated" with respect to such support; and that child support was not an issue and was to be set at "zero," with the court retaining jurisdiction until daughter graduates from high school.

The record shows the court initially inquired of wife whether she wanted to vacate the restraining order against husband as part of their settlement. The record shows wife told the court that she "felt safe" if the restraining order was vacated, that nobody had threatened her to vacate that order and that her request to do so was voluntary.

3

The court next reviewed *and* questioned both wife *and* husband regarding the terms of their "global settlement" set forth in the (proposed) stipulated judgment. With respect to wife's two retirement accounts, the court noted under the (proposed) stipulated judgment wife would keep both as her sole and separate property. On questioning, husband informed the court he had no retirement accounts of his own.

Regarding the residence, the court reviewed the terms of the (proposed) stipulated judgment, noted there was no appraisal and asked what the settlement would be if it was "upside down." Wife noted the residence then was upside down and, as a result, wife informed the court that the lender's only recourse would be to take back the property through a "short sale."

The court next asked whether husband had removed all of his personal belongings from the residence. Husband noted there potentially was a few more boxes of his things in the attic but confirmed the parties could work together to ensure he received all of his possessions.

The record shows wife, on questioning, informed the court she understood the terms of the (proposed) stipulated judgment, including the minor changes made to it by the court. Wife also informed the court that she had adequate time to review the (proposed) stipulated judgment and that she believed it provided a "fair and equitable distribution" of the couple's assets and debts; that she understood she was not going to receive any spousal support from husband, despite the fact they had a long-term marriage; and that because the parties agreed the court would not retain jurisdiction over that issue, "neither side can ever come back and request spousal support" as a result.

4

The record shows the court next addressed similar issues with husband:

"The Court: All right. Mr. Hendrix, did you hear the stipulation that I summarized into the record and made a few changes to, that was presented to me?

"Mr. Hendrix: That was overheard and understood, yes.

"The Court: That was what?

"Mr. Hendrix: Overheard and understood.

"The Court: And so you had time to go over the stipulation with [wife's attorney]?

"Mr. Hendrix: Yes.

"The Court: And you understand that [wife's attorney] represents Miss Hendrix and does not represent you, but I recognize that he helped both of you write this up?

"Mr. Hendrix: That's correct, he did.

"The Court: Okay. And you also understand that as to spousal support, that once I terminate that today, that it is forever terminated, and neither of you can come back at any time and request spousal support?

"Mr. Hendrix: Agreed to and understood.

"The Court: And that is your -- you're requesting that I adopt this agreement to be incorporated into a judgment of dissolution today?

"Mr. Hendrix: Yes.

"The Court: And any violation of this order may result in civil or criminal penalties?

" Mr. Hendrix: Understood.

"The Court: Do you have any questions for me?

5

" Mr. Hendrix: No.

"The Court: Does this take care of everything, as far as you know, regarding your dissolution?

"Mr. Hendrix: Yes. As far as I know, yes.

"The Court: All right. I will go ahead and grant the judgment of dissolution. That is effective today. I will find the court has jurisdiction to do that. I will restore wife's former name, and I'll adopt the written stipulation to be drafted into a judgment and submitted by [wife's attorney]."

Husband subsequently moved under Code of Civil Procedure section 473[1] to set aside the stipulated judgment and the judgment of dissolution entered thereon. Husband alleged in connection with his motion that he entered into the stipulated judgment "under duress" and that he was unaware both of the "right" to his own legal counsel and the "right to [a] reasonable time to review" the terms of the stipulated judgment before signing it. Husband further alleged wife's attorney "pressured" and "intimidated" him to sign the stipulated judgment because wife was then seeking to obtain and, according to wife's attorney, would succeed in obtaining, a permanent domestic violence restraining order against him unless he settled.

Husband in his motion also moved to set aside the temporary domestic violence restraining order that had issued in mid-April 2013. The record shows that husband's

---

[1] We note husband moved under Code of Civil Procedure section 473, and not under Family Code section 2122, to set aside the stipulated judgment and judgment of dissolution based thereon.

6

motion was heard on or about September 10, 2013 and, in an unreported proceeding, denied by the court.

Husband on September 10, 2013 (ostensibly after his initial motion was denied earlier that day) renewed his request to set aside certain terms of the stipulated judgment. Specifically, husband in his renewed motion sought spousal support from wife and also to modify the terms of their agreement regarding the residence. In moving for such relief, husband contended wife misrepresented on her original income and expense declaration that she had only one retirement account when in fact she fully disclosed, as noted in the stipulated judgment, that she had two such accounts in her name. Husband further disputed wife's valuation of the residence, including her claim the property was then "underwater."

At the October 15, 2013 hearing on husband's renewed motion, the court noted husband and wife had both signed a "stipulation and waiver of final decree" on May 28, 2013 and thus the court stated it was a "little confused" by husband's renewed motion, after the court on September 10, 2013 already had denied his previous set aside motion. In response, husband stated he was "at a loss" to understand why the court would accept the stipulated judgment when the court allegedly did not have "all the facts" before it. Husband thus maintained the stipulated agreement and judgment of dissolution entered thereon were invalid.

Wife stated she was "a little uncomfortable" when she entered into the stipulated judgment with husband because she released the temporary restraining order and did not pursue the permanent restraining order against husband. She noted with respect to the

7

residence, "many months before" they entered into the stipulated judgment husband had signed over the residence to her via a "notary."

In response, husband contended wife's former attorney coerced him to settle on May 28, 2013 by threatening to obtain a permanent restraining order against husband based on papers that already had been filed in court. As proof of coercion, husband also lodged a declaration by his mother.[2]

According to husband, wife's former attorney since has "eloquently excuse[d] himself" from representing wife because he allegedly was concerned about being found guilty for perjury in connection with this issue. The court, however, noted that at the September 10 hearing it had received an email from wife's former attorney stating he was no longer representing wife because husband was "looking up his [i.e., wife's former attorney's] personal home address."

The record shows the court again denied husband's (renewed) set aside motion, ruling as follows:

"The Court: . . . I'm going to make the following record: The parties were in here. Miss Hendrix was represented by [her former attorney]. The parties were in here on a hearing regarding a domestic violence restraining order on May 28, 2013. The temporary

---

[2]     The declaration by Virginia Lash included in the record is date-stamped November 5, 2013, *after* the September 10 and October 15, 2013 set aside hearings. From the record, it appears the Lash declaration was before the court as an attachment, but the court did not rely on it in making its rulings, at least at the October 15, 2013 hearing. In any event, we note the Lash declaration is not signed under penalty of perjury, contains multiple hearsay and, even if considered on appeal, as we discuss *post*, does not affect the outcome of this case.

restraining order was granted. The matter was set for a hearing on the permanent restraining order. The parties were out in the hallway for a period of time prior to that hearing, came in with a full agreement that day to both vacate the permanent restraining order, not go forward on any hearing, and they wanted to adopt a stipulation that took care of all out[]standing issues regarding their dissolution. That was entered on May 28th.

"I have a stip and waiver of final declaration of disclosure, and I have a full, written agreement that took care of all out[]standing issues regarding the dissolution.

"I inquired at that time, again, adopting the parties' stipulation, not making any independent analysis as to the basis of the judgment other than inquiring of both sides that you fully understood what it is you were doing. I don't get involved in the bargaining outside, and whatever was said outside, it was clear on that day to this court that there was some give and take and that Miss Hendrix was not going forward on the restraining order but was going to have a final divorce, and Mr. Hendrix was in agreement that day and voluntarily entered that stipulation.

"Thereafter, the matter was set for a set aside on September 10th, at which time [wife's former attorney] did sub out of the case, and there was some indication as to why that happened, and [wife's new attorney] subbed in . . . the case. The similar arguments were made, and the motion to set aside the judgment was denied.

"I reviewed the transcript. I reviewed the stipulation, and I found no basis in the law for a set aside. I didn't find any coercion. I didn't find any change in facts, so to tell me that, you know, I just don't get it, I was here. I took that stip. I talked to you that day.

9

I know your mother was in the hall, and I think your daughter was in the hall prepared to testify as to the restraining order. [¶] . . . [¶]

". . . I inquired quite a bit that day because I was finalizing your divorce at a domestic violence hearing, so I wanted to make sure everybody had time, knew what they were doing.

"I denied the set aside. It was voluntary. The transcript is clear it was voluntary. You've now filed a motion and an amended motion that raises what you perceive to be some defects, including things like the declaration of disclosure being in error, but I don't find that any of those defects are accurate or -- or any of those defects would cause me to set aside the judgment.

"You also request spousal support, which was terminated, so I have no jurisdiction to grant you any spousal support. At this point, the judgment remains. I'm not going to grant you spousal support, and I don't find that any of the grounds raised in the request for order cause me to go back and do anything different. I mean, you talk about income. You talk about various issues, but those were all resolved, and the only basis for doing anything is if you had some sort of omitted asset, and I've yet to see that. So at this point there's nothing for me to rule on. The motion to set aside was previously ruled on and denied, and the request made today seemed to be rehashing either the same issues or requesting things that unless the court granted the set aside, I don't have any jurisdiction to order things like spousal support because it was terminated."

Husband reiterated that when wife originally filed for divorce, she disclosed only one retirement account, and thus claimed that was an omission. The court disagreed,

10

noting that while wife may have failed to disclose a second account initially, that second account was in fact disclosed and was in fact the subject of the stipulated judgment. As such, the court ruled there was no omission; when husband entered into the stipulated judgment, he was aware wife had two retirement accounts and, with that knowledge, willingly and voluntarily entered into the stipulation.

## DISCUSSION

Initially, we note that husband did not include in his brief to this court *all* the material evidence on the issues he raised in this court. "In furtherance of [his] burden, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citation.]" (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.) "An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409–410; *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [noting "[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable" and noting the failure of a party to do so permits a reviewing court to deem waived any substantial evidence contention].)

Moreover, it is axiomatic that "'[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error *must be affirmatively shown.* This is not

11

only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564, second italics added.) Further, unless otherwise shown, "it is presumed that the court followed the law." (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.)

Here, husband failed to set forth a sufficient statement of facts stating *all* of the *material* evidence, both favorable and unfavorable, to his position. He also failed to support any of his arguments with legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [noting "[i]t is the duty of [an appellant], not of the courts, 'by argument and the citation of authorities to show that the claimed error exists'"].) As a self-represented litigant, plaintiff is held to the same standard and "'"same restrictive rules of procedure"'" as an attorney. (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 [noting a doctrine providing for leniency or "generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation"].)

Assuming husband has not forfeited his appellate claims (see *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [noting the well-established rule that any appellate contention or claim of error that is not supported by an adequate record is deemed forfeited]), we conclude on the merits the trial court properly exercised its discretion when it found he voluntarily and knowingly entered into the stipulated judgment, on

which the judgment of dissolution was based, and when it found wife fully disclosed all assets. We further conclude these findings are supported by ample evidence in the record.

A trial court's decision on a motion to set aside a stipulated judgment is reviewed for abuse of discretion. (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682.) The trial court's exercise of discretion will not be disturbed in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. The test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, or when the evidence simply affords an opportunity for a difference of opinion, the reviewing court has no authority to substitute its decision for that of the trial court. The burden is on the complaining party, in this case husband, to establish abuse of discretion. (See *ibid.*)

Under that standard of review, "[w]e are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

Here, as noted, the record shows husband and wife, with the assistance of wife's attorney, negotiated over and ultimately agreed to terms regarding both the restraining order against husband and the distribution of their assets. The record shows that the parties met and negotiated just prior to the hearing on wife's request for a permanent restraining order against husband; that after they agreed to terms the court carefully went over their (proposed) stipulated judgment and then questioned each of them to ensure

13

they understood the agreement, including whether the court's jurisdiction over specific items would continue (i.e., custody of daughter, until she completed high school) or forever terminate (i.e., spousal support); and that in response to the court's inquiry, husband stated on more than one occasion that he understood the terms of the (proposed) stipulated judgment and at no time suggested he felt coerced or under duress to enter into, or needed more time to consider and review, that document.

That husband contends he felt coerced to enter into the stipulated judgment because of comments made by wife's attorney shortly before the hearing on the permanent restraining order does not change our decision in this case. "'"[D]uress, which includes whatever destroys one's free agency and constrains [a person] to do what is against [his or her] will, may be exercised by threats, importunity or any species of mental coercion [citation] . . . ."' [Citation.] It is shown where a party 'intentionally used threats or pressure to induce action or nonaction to the other party's detriment. [Citation.]' [Citations.] The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing. [Citation.]" (*In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 84, fn. omitted.)

Here, the record shows husband already was subject to a temporary restraining order. In addition, the record shows both wife *and* daughter were prepared to testify in connection with the issuance of the permanent restraining order. Thus, to the extent wife's attorney informed husband that wife already had filed her papers to obtain a final restraining order and/or that wife would succeed in doing so does not amount to duress or coercion as such comments were neither an improper threat nor made in bad faith nor

14

were separately actionable. (See *In re Marriage of Baltins*, *supra*, 212 Cal.App.3d at p. 84, fn. 8, quoting the Restatement Second of Contracts, §§ 175 & 176.)

In addition, the statements by wife's attorney shortly before the hearing on the permanent restraining order did not leave husband without any reasonable alternatives. (See *In re Marriage of Baltins*, *supra*, 212 Cal.App.3d at p. 84; see also *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158 [noting the economic duress doctrine typically comes into play "upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure"].)

Indeed, husband simply could have contested the issuance of the permanent restraining order by appearing and testifying at the hearing, which was set for the same time and at the same location where husband and wife were negotiating their settlement. Husband thus had a reasonable alternative available to him short of settlement and to the extent he felt otherwise, it was based not on anything wife and/or her attorney said or did, but on the fact husband *already* was the subject of a restraining order after he allegedly threatened to kill wife.

Finally, although the record is devoid of any evidence of duress or coercion, we note that even if there was some evidence of such (either from husband or from the Lash declaration, for example), our decision affirming the denial of husband's set aside motion(s) would remain unchanged: whether there is some evidence or even a conflict of the evidence to support a different finding or result is irrelevant in our role on appeal, which is limited to determining whether there is sufficient evidence in the record to

15

support the finding(s) actually made. (See *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [noting the rule that if there is "substantial" evidence present in the record, "no matter how slight it may appear in comparison with the contradictory evidence, the judgment [or finding] must be upheld"].) As noted, the record contains ample evidence to support the finding of the court that husband voluntarily and freely entered into the stipulated judgment, a finding we cannot disturb on appeal.

DISPOSITION

The order denying husband's set aside motion is affirmed. Each party to bear their own costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

McDONALD, J.

16