Filed 8/6/24  Elite Financial Realty, LLC v. Pellequr LLC CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| ELITE FINANCIAL REALTY, LLC,<br><br>    Plaintiff, Cross-defendant, and Appellant,<br><br>    v.<br><br>PELLEQUR LLC et al.,<br><br>    Defendants, Cross-complainants, and Respondents;<br><br>Ron Mavaddat,<br><br>    Cross-defendant and Appellant. | B321172 & B324200<br><br>(Los Angeles County Super. Ct. No. SC128603) |

APPEALS from an order and a judgment of the Superior Court of Los Angeles County.  Helen Zukin, Judge.  Affirmed.

Morton Minikes for Plaintiff, Cross-defendants, and Appellants.

Albert J. Tumpson for Defendants, Cross-complainants, and Respondents.

_____

**INTRODUCTION**

The trial court ordered plaintiff and cross-defendant Elite Financial Realty, LLC, and cross-defendant Ron Mavaddat (collectively referred to as the "Lessors") to pay $10,000 in sanctions, and it found seven contested issues in favor of defendant and cross-complainant Pellequr LLC[1] and defendants Anna Margaryan, Dennis Colonello, and Steven Yoon Shin (defendants collectively referred to as Pellequr), after finding the Lessors failed to obey a prior order compelling them to provide further responses to Pellequr's discovery requests. The Lessors appeal from the court's sanctions order as well as from the judgment entered in Pellequr's favor, after the court granted Pellequr's motion for summary judgment concerning the Lessors' complaint and motion for summary adjudication concerning Pellequr's cross-complaint. The Lessors challenge only the merits of the court's sanctions order, however. They do not challenge the merits of the court's rulings on the summary judgment and summary adjudication motions. We have consolidated both appeals for purposes of oral argument and decision.

We conclude the Lessors have failed to meet their burden on appeal to show the court abused its discretion when it imposed

_____

[1] Pellequr initially appeared in these lawsuits as "Pelle Cure LLC." The court later granted a motion to amend the pleadings to reflect that "Pelle Cure LLC" changed its name to "Pellequr LLC."

the challenged sanctions.  We therefore affirm the sanctions order and the judgment.

## FACTS AND PROCEDURAL BACKGROUND

**1.    The lease**

Elite Financial Realty, LLC (Elite) owns commercial property in Beverly Hills.  Ron Mavaddat is Elite's manager.  Pellequr LLC (Pellequr) operates skin care spas.

In June 2017, Elite agreed to lease one of the property's units to Pellequr for five years.  Margaryan, Colonello, and Shin guaranteed Pellequr's performance under the lease.

When the parties executed the lease, Elite agreed to allow Pellequr to renovate the unit to make it suitable for operating a skin care spa.  Elite warranted, among other things, that the property's existing improvements, including those within the unit leased to Pellequr, were compliant with "building codes, applicable law, covenants or restrictions of record, regulations[,] and ordinances."  Elite also warranted that:  (1) the unit's plumbing, heating, ventilation, and air conditioning systems would be in good working condition; (2) the structural elements of the unit's roof and bearing walls would be free of material defects; and (3) the unit did not contain hazardous levels of mold or fungus.  Elite promised that if the property did not comply with its warranties, it would "rectify, repair and remediate the non-compliance at [Elite's] expense."

In July 2017, the City of Beverly Hills refused to approve Pellequr's renovation plans because Elite's property did not comply with "applicable handicap parking requirements."  The Lessors refused to take any action to rectify the situation, claiming that the parking lot was "grandfathered in" by the city.

3

After Pellequr negotiated with the city for several weeks, its renovation plans were approved.

Before beginning its renovation work, Pellequr discovered that the unit's air conditioning system was not in good working condition. Elite refused to repair or replace the system.

After Pellequr began renovating the unit around late August 2017, it discovered toxic mold growing inside one of the unit's exterior walls and emanating from another unit within the property. Elite did not take any steps to remediate the mold until late October 2017. Pellequr also discovered that many of the pipes serving its unit and adjacent units were leaking or otherwise in need of repair, and that a portion of a load-bearing wall had been removed to allow equipment for the unit's air conditioning system to pass through. Elite refused to repair the wall and the pipes.

In December 2017, Pellequr terminated the lease, claiming the Lessors failed to timely cure their breaches of the lease, repair defective areas of the unit, and provide Pellequr with quiet possession of the unit. By that time, Pellequr had paid several months' rent, excluding fees for use of the property's common areas, which Pellequr claimed it was not required to pay under the terms of the lease.

## 2. The complaint and cross-complaint

In late December 2017, Elite sued Pellequr for: (1) declaratory relief; (2) unpaid rent and rental damages; and (3) damages to leased premises. Elite sought a declaration that Pellequr was obligated under the lease to pay fees associated with the property's common areas, and that Pellequr lacked justification to terminate the lease. Elite also sought to recover

4

past and future unpaid rent owed under the lease and damages caused by Pellequr's attempts to renovate the unit.

In February 2018, Pellequr filed a cross-complaint against Elite and Mavaddat for: (1) breach of the lease; (2) breach of the covenant of good faith and fair dealing; (3) fraud; and (4) negligent misrepresentation.

**3.    Discovery**

In March 2018, Pellequr propounded discovery requests, including interrogatories, form interrogatories, and requests for production of documents, to the Lessors.

In October 2018, Pellequr moved for sanctions and an order compelling the Lessors to provide further responses to the discovery requests. Pellequr argued, among other things, that the Lessors failed to respond to several discovery requests and provided improper responses, or raised improper objections, to several requests.

In April 2019, the court granted Pellequr's motion. The court imposed $14,000 in sanctions against the Lessors and their counsel. The court also imposed an issue sanction, finding that Mavaddat is Elite's alter ego. The court ordered the Lessors to provide code-compliant "further responses, and initial responses where no response was made previously, without objection," and, if they cannot comply with a document request, to provide a reason why they are unable to do so.

In September 2019, Pellequr filed another motion for sanctions and an order compelling the Lessors to provide further responses to Pellequr's discovery requests, arguing the Lessors continued to provide improper discovery responses.

In September 2020, the court granted Pellequr's motion in part, ordering the Lessors to provide further responses to

5

Pellequr's discovery requests. The court precluded the Lessors from objecting to Pellequr's requests, aside from claiming that the requested information or documents are privileged. The court also ordered the Lessors to "include a detailed statement of the diligent investigation" they conducted to obtain information responsive to Pellequr's interrogatories and documents responsive to the Pellequr's document demands. The Lessors were required to provide information about the people they contacted to obtain information and documents, including those people's contact information. To the extent any responsive documents were already produced by any party through formal discovery, the court explained, those documents did not need to be produced again. Finally, to the extent the Lessors claimed they could not comply with any of Pellequr's document demands because the responsive documents were not in the Lessors' possession, custody, or control, the Lessors were required to "comply with Code of Civil Procedure section 2031.230 and state the reasons therefor."

In August 2021, Pellequr moved for sanctions and an order compelling the Lessors to provide further responses to Pellequr's discovery requests. In support of their motion, Pellequr submitted a nearly 400-page separate statement detailing the alleged defects in the Lessors' most recent discovery responses.

In September 2021, the court ordered the Lessors to provide "full and complete Code-Compliant further responses to each and every discovery request" set forth in Pellequr's August 2021 separate statement. The court also ordered the Lessors to "address and fully remediate and correct each and every defect" for "each and every request set forth" in the separate statement. Finally, the court ordered the Lessors to "fully and completely

6

comply" with its September 2020 order. The court did not rule on Pellequr's request for sanctions.

In March 2022, Pellequr filed another motion for sanctions and an order compelling the Lessors to provide further responses to Pellequr's discovery requests. Pellequr argued, among other things, that the Lessors' most recent discovery responses failed to comply with the court's September 2020 and September 2021 orders. In support of their motion, Pellequr submitted a more than 200-page separate statement detailing the alleged defects in the Lessors' discovery responses.

In April 2022, the court granted Pellequr's motion, finding that the Lessors' discovery responses were deficient and violated the court's September 2020 and September 2021 orders. The court provided 10 examples in which the Lessors' responses violated the court's prior orders, explaining how their responses failed to cure the defects identified in Pellequr's August 2021 separate statement. The court found that the Lessors' "conduct [was] a knowing and willful violation of the discovery statute[s] and prior court orders," and that the Lessors' "repeated discovery violations" impaired Pellequr's "ability to prepare [their] defenses and counterclaims for trial."

The court imposed $10,000 in monetary sanctions against the Lessors. The court also imposed issue sanctions, explaining that it would be futile to require the Lessors "to provide yet another set of amended responses." Specifically, the court found that Elite breached the lease in several of the ways alleged in Pellequr's cross-complaint, and that Pellequr is not liable for payment of the common area operating expenses under the lease.

**4.      Summary judgment and summary adjudication**

In June 2022, Pellequr moved for summary judgment of all the causes of action asserted in Elite's complaint and for summary adjudication of the first cause of action asserted in Pellequr's cross-complaint.  Pellequr argued that, in light of the court's order imposing issue sanctions against the Lessors, there were no material issues in dispute as to any of the challenged causes of action.  The Lessors did not oppose Pellequr's motion.

In August 2022, the court granted Pellequr's motion in its entirety.  As to the causes of action asserted in Elite's complaint, the court found Pellequr presented evidence showing:  (1) it was not required to pay fees associated with the common areas of Elite's property; (2) it was permitted to demolish portions of the rental unit; and (3) it was justified in terminating the lease.  Because the Lessors failed to present any evidence in opposition to Pellequr's motion, the court found Pellequr met its burden to show Elite could not prevail on any of the causes of action asserted in its complaint.

As to the first cause of action for breach of contract asserted in Pellequr's cross-complaint, the court found Pellequr presented evidence that the Lessors breached the contract, causing Pellequr to suffer $149,355.89 in damages for out-of-pocket expenses associated with renovating the unit.  Because the Lessors did not oppose Pellequr's motion, the court found Pellequr was entitled to summary adjudication of the first cause of action asserted in its cross-complaint.

Pellequr later dismissed the second, third, and fourth causes of action asserted in its cross-complaint.

In September 2022, the court entered judgment in Pellequr's favor on Elite's complaint and the first cause of action

asserted in Pellequr's cross-complaint.  The court awarded Pellequr $219,614.54 in damages, consisting of $149,355.89, plus 10 percent interest from the date it terminated the lease in December 2017.

The Lessors appeal from the April 2022 sanctions order and the September 2022 judgment.

## DISCUSSION

The Lessors challenge the merits of the court's April 2022 sanctions order in both of their appeals.  In their first appeal, the Lessors challenge the sanctions order to the extent it imposed monetary sanctions against them, and in their second appeal, they challenge the order's imposition of issue sanctions.  The Lessors do not challenge the merits of the court's ruling on Pellequr's summary judgment and summary adjudication motion. Instead, the Lessors argue only that the order granting summary judgment and summary adjudication in Pellequr's favor must be reversed if we reverse the sanctions order.  Because the arguments that the Lessors raise in both appeals are, for the most part, the same, we address both appeals together.

1.    **Applicable law and standard of review**

Code of Civil Procedure section 2023.030 authorizes the trial court to impose monetary, issue, evidence, or terminating sanctions against anyone "engaging in the misuse of the discovery process."  (Code Civ. Proc., § 2023.030, subd. (a).)  Such sanctions are authorized if a party fails to obey an order compelling responses to interrogatories or requests for production of documents.  (Code Civ. Proc., §§ 2023.010, subd. (g); 2030.290, subd (c); 2031.300, subd. (c).)  The court may also impose such sanctions for "[f]ailing to respond or to submit to an authorized method of discovery."  (Code Civ. Proc., § 2023.010, subd. (d).)

9

If the court is authorized by statute to impose a monetary sanction, it must impose such sanction "unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Code Civ. Proc., § 2023.030, subd. (a).) Before imposing any sanctions for misuse of the discovery process, the court must afford notice and the opportunity for a hearing to any affected party, person, or attorney. (Code Civ. Proc., § 2023.030.)

The trial court has broad discretion to impose sanctions for misuse of the discovery process. (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390.) We will reverse an order imposing monetary or issue sanctions only if the court exercised its discretion in an arbitrary, capricious, or whimsical manner. (*Ibid*.)

**2.      The Lessors have failed to meet their burden on appeal**

It is a fundamental principle of appellate review that the challenged judgment or order is presumed correct. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 (*Keyes*).) The appellant carries "the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record." (*Ibid*.) To satisfy this burden, the appellant must, among other things, tailor each argument raised in its appeal to the applicable standard of review (*Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465); support each claim with "reasoned argument and citations to authority" (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799); and set forth, discuss, and analyze all parts of the record, both favorable and unfavorable to the appellant's position, that support the trial court's findings that are challenged on appeal

10

(*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 (*Roman Catholic Archbishop*)).

The reviewing court is not obligated to develop issues raised by the appellant or "to cull the record" to find relevant facts. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 (*Bains*).) Instead, our review is limited to the issues that the appellant adequately raises and briefs. (*Ibid.*) The appellant forfeits any points that are not supported by cognizable legal argument and factual analysis. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.)

As we explain, the Lessors have failed to meet their burden on appeal to show the court abused its discretion when it imposed monetary and issue sanctions. Specifically, the Lessors have failed to develop meaningful legal analysis, with citations to pertinent parts of the record, to support any of the issues raised in their briefs.

In its April 2022 order, the court explained that it imposed monetary and issue sanctions against the Lessors because they failed to obey the court's September 2020 and September 2021 orders compelling them to provide further responses to Pellequr's discovery requests. (See Code Civ. Proc., §§ 2030.290, subd. (c) [court may impose monetary and issue sanctions for failing to obey prior order compelling further responses to interrogatories]; 2031.300, subd. (c) [same for failing to obey prior order compelling further responses to requests for production of documents].) As the court explained, the September 2021 order required the Lessors to, among other things, provide "full and complete Code-Compliant further responses to each and every discovery request," and to "address and fully remediate and correct each and every defect" for "each and every request," set forth in Pellequr's August 2021 separate statement.

11

To illustrate how the Lessors disobeyed prior discovery orders, the court discussed 10 of the Lessors' most recent responses to Pellequr's discovery requests. For each example, the court explained how the Lessors failed to correct the defects from their prior discovery responses that Pellequr identified in its August 2021 separate statement. Thus, to establish on appeal that the court erred in finding the Lessors disobeyed prior discovery orders, the Lessors were required to, at a minimum, discuss Pellequr's August 2021 separate statement. (*Roman Catholic Archbishop*, *supra*, 177 Cal.App.4th at p. 218.) The Lessors fail to discuss, let alone cite to, the separate statement in their briefs.

Here is an example that highlights the deficiencies of the Lessors' briefs. Pellequr propounded a series of special interrogatories to each of Elite and Mavaddat. In Special Interrogatory No. 12 propounded to Mavaddat, Pellequr sought all facts that support the Lessors' contention that they had no obligation to comply with the City of Beverly Hills's handicap parking regulations.

In its August 2021 separate statement, Pellequr identified numerous defects in Mavaddat's previous responses to Special Interrogatory No. 12, including his failure to identify each person who has knowledge of any fact tending to prove or disprove the Lessors' claim that they had no obligation to comply with the city's handicap parking regulations. Pellequr also asserted that Mavaddat's previous responses failed to explain what inquiries the Lessors made of prior tenants who occupied units in the Lessors' property, even though Mavaddat claimed none of the prior tenants received any demands from the city to comply with the handicap parking regulations. In its September 2021 order,

12

the court directed Mavaddat to cure all the defects that Pellequr identified in his previous responses to Special Interrogatory No. 12 in the August 2021 separate statement.

The court found that Mavaddat's most recent responses to Special Interrogatory No. 12 were deficient because he failed to cure the defects identified in Pellequr's August 2021 separate statement. For instance, the court found that Mavaddat failed to "identify a single tenant[] or provide any explanation as to what [the Lessors] did or who [they] talked to in order to" come to the conclusion that they were not required to comply with the city's handicap parking regulations.

In their briefs, the Lessors fail to discuss Pellequr's August 2021 separate statement. They do not explain how they addressed, let alone cured, the defects in Mavaddat's responses to Special Interrogatory No. 12 that Pellequr identified in its separate statement, including Mavaddat's failure to name any of the prior tenants he claimed never received demands from the city to comply with handicap parking regulations. Indeed, the Lessors do not cite to a single page of the separate statement. Instead, the Lessors include lengthy quotes of Mavaddat's most recent response to Special Interrogatory No. 12, as well as Mavaddat's responses to other interrogatories that he incorporates by reference in his response to Special Interrogatory No. 12, and argue, in general terms, why Mavaddat's response addresses what is requested by the interrogatory.

The Lessors follow a similar pattern for all the issues raised in their briefs. That is, the Lessors never discuss, or even cite to, Pellequr's August 2021 separate statement. This tactic is fatal to the Lessors' appeals.

13

As we noted above, the August 2021 separate statement is nearly 400 pages, and it identifies numerous defects in each of the Lessors' prior responses to Pellequr's discovery requests. The Lessors' most recent set of discovery responses that were supposed to cure the defects identified in Pellequr's August 2021 separate statement span nearly 100 pages, while Pellequr's most recent separate statement that identifies how the Lessors continued to provide deficient discovery responses spans more than 200 pages. It is not our job to comb through hundreds of pages of the record, without any meaningful guidance from the Lessors, to ascertain whether those parts of the record support or undermine the court's decision to impose monetary and issue sanctions. (*Bains*, *supra*, 172 Cal.App.4th at p. 455; see also *In re Marriage of Fink* (1979) 25 Cal.3d 877, 888 ["It is neither practical nor appropriate for us to comb the record on [the appellant's] behalf"].) The Lessors, therefore, have not shown the court abused its discretion in finding they violated the September 2021 order by failing to cure the defects identified in Pellequr's separate statement.

In sum, the Lessors have forfeited any challenge to the April 2022 sanctions order by failing to address, or even cite to, the portions of the record on which that order is based—i.e., Pellequr's August 2021 separate statement. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived' "].) Because the Lessors' challenge to the order granting summary judgment and summary adjudication in Pellequr's favor is premised entirely on their challenge to the April 2022 sanctions order, the Lessors

14

have failed to show the September 2022 judgment should be reversed.

## DISPOSITION

The April 2022 sanctions order and September 2022 judgment are affirmed.  Respondents shall recover their costs on appeal.

VIRAMONTES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

15