Filed 2/10/26  In re E.G. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.G. et al., Persons Coming Under the Juvenile Court Law. | B347218 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>E.R.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP04228D-G) |

APPEAL from an order of the Superior Court of Los Angeles County, Cristina G. Legaspi, Judge.  Affirmed.

Jesse Frederic Rodriguez, Giselle Marie Achecar, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals from the June 26, 2025 order terminating parental rights to four of her children under section 366.26.[1] Mother's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (Department) did not comply with their initial inquiry obligations under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (Cal-ICWA) (§ 224 et seq.). The Department concedes that its ICWA inquiry efforts were inadequate and asks us to conditionally reverse and remand with directions to make an initial inquiry of available extended maternal family members. However, based on mother's opening brief and our independent review of the record, we conclude that (1) mother forfeited her contention of ICWA error by failing to support her argument with citations to the record, and (2) there was substantial evidence to support the court's determination that the minors here were not Indian children. We therefore affirm the termination of parental rights.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother's appeal concerns an order terminating parental rights to four of mother's children. The two oldest, E.G. and S.G., share the same father, M.G. The Department was unable to locate P.H.'s father. E.B. is the father of V.B., mother's youngest child.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

In December 2021, E.G., S.G., and P.H. were declared dependents in a prior dependency case. A year later, the court terminated jurisdiction with an order granting mother and M.G. joint physical and legal custody of the two older children, and releasing P.H. to mother. The Department's reports in the current case reported that in the prior dependency case, the juvenile court had found no reason to know minors were Indian children under ICWA.

A second case was initiated in the fall of 2023, and the court declared E.G., S.G., and P.H. dependents based domestic violence between mother and E.B. (mother's boyfriend), E.B.'s physical abuse of the children, and mother's failure to protect the children, including a count that mother knew maternal uncle was a methamphetamine user and allowed him to live in the family home. During the initial investigation, the Department social worker interviewed mother in the family home. Also present in the home at the time of mother's interview were mother's children; maternal grandmother; maternal grandmother's minor daughters; Beatriz, a parent advocate from Parenthood Partners Family Services; and mother's parent advocate through the regional center. Beatriz reported she saw the family three times a week for four to six hours per day, assisting mother with the goal of becoming independent. Mother, maternal grandmother, and Beatriz all denied the children had any Indian ancestry. The investigating social worker interviewed another social worker who worked with maternal grandmother on maternal grandmother's ongoing dependency case. Maternal grandmother's social worker denied any Indian ancestry for the family. In a separate interview, maternal uncle also "denied ICWA." The social worker interviewed C.G., the paternal

3

grandmother of E.G. and S.G., who also "denied ICWA." Paternal grandmother C.G. saw all three children regularly, and they would stay with her for a week or two at a time.

After an extended visit with C.G. that started in September, the children were placed with C.G. in November 2023.

V.B. was detained from mother's custody shortly after she was born, and in March 2024, she was declared a dependent child. Mother and V.B.'s father, E.B., both denied any Indian ancestry. The juvenile court in Riverside County found that V.B. was not an Indian child. E.B. identified his siblings, paternal uncle M.B., and paternal aunt J.B., as possible placement options, but asked the investigating social worker not to contact them until he (E.B.) consented. The social worker later contacted paternal uncle M.B., who denied Indian ancestry. The social worker was unable to contact paternal aunt J.B., and J.B.'s voice mail was not set up.

In April 2024, as part of a concurrent planning assessment, a Department social worker noted that paternal grandfather J.G. needed to be added as a resource parent for adoption consideration. At a six-month review hearing in May 2024, the court terminated reunification services after finding that mother and J.G.'s progress had been insubstantial, and ordered the Department to initiate an adoptive home study.

Paternal grandfather J.G. was present during a visit between mother and her children in July 2024, but there was no indication in the Department's report that J.G. spoke to the social worker. A six-month status review report stated that C.G. and J.G. were the caregivers for V.B., and that their home had been given resource family approval in November 2023. At a

permanency planning hearing in November 2024, the court continued to find that ICWA did not apply to the three older minors.  In fact, at the hearing under section 366.26, the juvenile court noted the thoroughness of the Department's inquiry efforts before finding ICWA inapplicable.

The court terminated reunification services for mother and E.B., with respect to minor V.B., at a 12-month review hearing in March 2025.  V.B.'s paternal grandmother M.F. denied any Indian ancestry.

At a permanency planning hearing under section 366.26 in June 2025, the court terminated parental rights as to all four minors.  During the hearing, the court asked the Department about the extent of its ICWA inquiry, and also asked all family members present, including mother, father E.B., paternal grandmother C.G., paternal grandfather J.G, and paternal uncle J.G. whether any of them had Indian ancestry, and they all denied any Indian ancestry.  The minute orders also stated the court continued to find that ICWA was not applicable as to each minor.

## DISCUSSION

According to mother, the Department failed to satisfy its inquiry duties under ICWA and Cal-ICWA.  Mother's opening brief makes the following argument:  "There were living extended family members known to Department by name that the Department failed to inquire about their knowledge of the family's or the minors' American Indian heritage."  Mother identifies eight extended family members—five maternal and three paternal relatives—and argues that the Department "did

5

not question these extended family members, who were known by the Department, and named in the reports." However, mother's brief lacks any record citations directing us to the portion of the record where the relatives are identified. In fact, mother's brief lacks any information about the context or extent of the Department's contact, if any, with the named extended family members, or any efforts made to contact them.

The portion of mother's brief summarizing ICWA proceedings does summarize information obtained from some of the family members who were asked about possible Indian ancestry, but the summary is woefully incomplete. If one were to rely solely on the factual statement in mother's brief, the only extended family members questioned about possible Indian ancestry, beyond mother and the two fathers (M.G. and E.B.), were the two paternal grandmothers and V.B.'s paternal uncle. As we explain below, the record reflects that Department's inquiry efforts were far more extensive than mother describes in her brief.

Rather than filing a respondent's brief, the Department filed a letter brief conceding that its ICWA inquiry efforts were inadequate as to maternal and paternal relatives.[2] The letter brief goes on to request that this court conditionally reverse the termination of parental rights and remand with directions for the Department to "make initial inquiry of available extended maternal and family members, including making all reasonable

---

[2] The letter only identifies the five maternal relatives by name, followed by a string of record citations. The letter brief also purports to cite to an FOB, which we understand to be a reference to father's opening brief, but to our knowledge, no father has filed an appeal in the present case.

efforts to attempt to interview" just four identified maternal relatives, without explaining why a fifth maternal relative and all three paternal relatives identified by mother were left off the Department's list.

Despite the Department's concession, we conclude mother has forfeited her argument by failing to present a complete and accurate summary of the record evidence of ICWA inquiry efforts. In addition, we reject the argument that there was insufficient evidence to support the court's "no ICWA" finding on the facts before us.

## A.	Mother's Claim of ICWA Error is Forfeited by Inadequate Record Citations and an Inaccurate Summary of the Department's ICWA Inquiry Efforts

It is a well-established principle of appellate law that all factual statements must be supported by specific citations to the appellate record, regardless of where in the brief the facts are discussed.  (California Rules of Court, rule 8.204(a)(1)(C); *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 595–596 [appellate courts may disregard arguments relying on factual statements unsupported by record citations]; *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 [court may decide an "appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record"]; *City of Hesperia v. Lake Arrowhead Community Services Dist.* (2019) 37 Cal.App.5th 734, 740, fn. 1 [courts may "disregard[] factual statements in the parties' briefs that are not accompanied by accurate references" to the record]; *Fierro v. Landry's Restaurant Inc.* (2019) 32

Cal.App.5th 276, 281, fn. 5, [same]; *County of Riverside v. Workers' Comp. Appeals Bd.* (2017) 10 Cal.App.5th 119, 124 [courts may ignore factual statements in appellate briefs that do not contain record references]; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970 [statements must be supported by record cites "no matter where in the brief the reference to the record occurs"].)

In addition, every appellant has a duty to present both favorable and unfavorable facts in an even-handed manner. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620–621.) "[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received on behalf of the respondent." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246, see also *E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1286 [appellants failure to present both favorable and unfavorable evidence "waives any claim that the trial court's . . . finding is not supported by substantial evidence"]; *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218, [appellant forfeited issue on appeal by failing to "set forth, discuss, and analyze all [of] the evidence on that point, both favorable and unfavorable" in opening brief].)

Mother's brief provides no record citations to support her factual assertion that the eight identified extended family members were known to the Department and that the Department had the opportunity to ask those family members about Indian ancestry and failed to do so. The opening brief is not only lacking in relevant record citations, it also incorrectly and misleadingly asserts that the Department did not meet its

inquiry obligations because it failed to ask maternal grandmother, maternal uncle, paternal grandfather, and two maternal aunts about possible Indian ancestry. Rather than robustly opposing mother's argument by identifying the evidence in support of the Department's ICWA inquiry efforts, as we do below, the Department simply filed a letter brief conceding ICWA error.

In fact, the record establishes the Department did ask maternal grandmother and maternal uncle, and both denied that ICWA was applicable. Paternal grandfather J.G., who along with paternal grandmother C.G. was a prospective adoptive parent for all four children, also denied any Indian ancestry. With respect to mother's contention that the Department failed to ask two maternal aunts, ICWA does not impose an obligation to ask relatives who are under the age of 18 about Indian ancestry, and the record is clear that both maternal aunts were minors. (§ 224.1, subd. (c)(1); 25 U.S.C. § 1903(2).)

By failing to provide this court with an accurate summary of the relevant facts and failing to identify evidence unfavorable to her argument, mother has forfeited her contention that ICWA inquiry was inadequate.

## B. Substantial Evidence Supports the Juvenile Court's Determination that the Department Met its ICWA Inquiry Obligations

Although mother's mischaracterization of the record is a sufficient ground for this court to reject her argument of ICWA error, we also reject mother's argument that the lack of any inquiry efforts with respect to the three remaining family

9

members requires conditional reversal.  Ignoring the five family members discussed above, the following family members were not asked about Indian ancestry:  (1) maternal great uncle J.M., (2) the two older children's paternal great uncle A.S., and (3) V.B.'s paternal aunt J.B.  Mother's argument that failure to ask these family members about possible Indian ancestry constitutes reversible error ignores the extent to which the juvenile court had before it a well-developed record containing substantial evidence that the Department's inquiry efforts were proper, adequate, and duly diligent.  (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102; *In re Dezi C.* (2024) 16 Cal.5th 1112, 1141.)

The duty of initial inquiry under Cal-ICWA "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b)(2).)  Extended family members are persons over the age of 18 who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (§ 224.1, subd. (c)(1); 25 U.S.C. § 1903(2).)  And "on the first appearance upon a petition, 'the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' "  (*In re Kenneth D., supra*, 16 Cal.5th at p. 1099, quoting § 224.2, subd. (c).)

Our highest court has acknowledged, however, that the duty of inquiry does not require interviewing "every" extended family member.  (*Dezi C., supra*, 16 Cal.5th at 1140 [holding reversal is not required "in all cases in which every possible extended family member has not been asked about the child's

10

Indian ancestry"]; see also *id.* at 1153 (conc. opn. of Kruger, J.) ["Cal-ICWA does not, as some have assumed, require the juvenile court to leave no stone unturned in an " ' "open-ended universe of stones," ' " thereby creating ever-widening circles of mandatory inquiry"]; *id.* at 1167 (dis. opn. of Groban, J.) [requiring inquiry of "every member of a child's extended family, including every first and second cousin, every single niece and nephew, all aunts and uncles, all siblings-in-law" would be " 'absurd at best and impossible at worst' "].)

" '[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is "a quintessentially discretionary function" [citation] subject to a deferential standard of review.' (*Dezi C., supra*, 16 Cal.5th at p. 1141, quoting *Ezequiel G.* [(2022)] 81 Cal.App.5th [984,] 1005 [(*Ezequiel G.*)].) ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." ' (*Kenneth D., supra*, 16 Cal.5th at pp. 1101–1102.) Our high court thus has held, '[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error.' (*Dezi C.*, at p. 1141.)" (*In re C.R.* (2025) 112 Cal.App.5th 793, 800–801.)

"We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence. (§ 224.2, subd. (i)(2) [juvenile court's finding that ICWA does not apply to the proceedings is 'subject to reversal based on sufficiency of the evidence']; see also [*Ezequiel G., supra*,] 81 Cal.App.5th [at

11

pp.] 1004–1005 [reviewing juvenile court's finding that it had no reason to know a child is an Indian child for substantial evidence but reviewing decision that ICWA inquiry was adequate for abuse of discretion], disapproved on another ground in *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18; *Dezi C.*, at p. 1134 [declining to decide applicable standard of review].)" (*In re C.R., supra*, 112 Cal.App.5th at pp. 799–800.)

There was already ample evidence that there was no Indian ancestry through mother, as there was evidence a prior court had found ICWA inapplicable to those children, and the Department had already received negative responses from maternal and paternal relatives, as well as numerous service providers. Substantial evidence supported the court's finding that there was no reason to believe they were Indian children. Maternal great uncle J.M. resided in the same home as maternal grandmother and mother, but there is no evidence in the record that any relative had indicated he might have knowledge of any Indian ancestry, or that he ever communicated with anyone at the Department.

A.S., paternal great-uncle to E.G. and S.G., was residing in the home of paternal grandparents, and the Department reported in September 2023 that an attempt to obtain A.S.'s phone number from paternal grandmother had not yet yielded a response. The investigating social worker interviewed the social worker handling maternal grandmother's dependency case, who reported that there was no Indian ancestry. The case worker for mother's prior dependency case also reported that the family had no Indian ancestry. Multiple service providers were asked and denied that they had any reason to believe the family had any Indian ancestry.

The only paternal relative of mother's youngest child, V.B., who was not questioned about possible Indian ancestry was paternal aunt J.B. However, the investigation into V.B.'s safety was initiated in Riverside County, and the social worker there reported that father initially requested that paternal aunt and uncle not be contacted until he had a chance to talk to them, and that when the social worker tried calling paternal aunt, there was no answer and no way to leave a voicemail. In addition, V.B.'s father and her paternal uncle both denied any Indian ancestry.

From these facts, the juvenile court could infer that the Department's ICWA inquiry efforts were adequate, proper, and duly diligent.

## DISPOSITION

The juvenile court's June 26, 2025 order terminating parental rights under Welfare and Institutions Code section 366.26 is affirmed.

NOT TO BE PUBLISHED.


                                                                    MOOR, J.


WE CONCUR:


HOFFSTADT, P. J.              BAKER, J.


13